Stonsz *v.* The Equitable Life Assurance Society of the United States, Appellant.

Argued May 27, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

*William H. Eckert,* with him *Karl W. Warmcastle,* for appellant.

*H. F. Stambaugh,* with him *H. P. Eberharter, Ralph H. Demmler* and *Watson & Freeman,* for appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, October 5, 1936:

On June 28, 1927, appellee applied to appellant for an insurance policy containing provisions for death benefits, with a double indemnity feature, and annuity payments for disability. On the same day he was examined by appellant's physician, and paid his first premium as estimated by the agent. The latter gave appellee a receipt reciting that if he was then an insurable risk for the insurance applied for in the opinion of appellant's agents at the home office, it would be effective as of the date of the receipt. Appellee on or about June 30th sustained severe injuries to his hands, resulting in his total disability. Because of his employment in a coal mine, appellant's home office wrote his policy at an increased premium rate for death and disability and declined to incorporate therein the double indemnity feature. The total amount of the first premium upon the policy was $12.39 less than the payment made by appellee. The policy was dated July 6, 1927, and was delivered to appellee with a check for $12.39 on July 11th. The balance of his first payment was applied to cover the adjusted premium. Appellee and his wife repeatedly notified appellant's local agency of his injury. Appellant denied liability on the grounds that appellee was not insured at the time of the accident, and that proof of loss

was not properly made within the sixty-day period prescribed in the policy. A jury trial resulted in a verdict for appellee, and from the refusal of the court below to grant appellant's motion for judgment n. o. v., this appeal is taken.

The receipt issued to appellee when he paid his first premium and signed his application was as follows:
"L 137671

"Received of Peter Stonsz the sum of Two hundred twenty-three and $^{19}/_{100}$ ($223.19) Dollars for the first semi-annual premium on proposed insurance for $10,000 on the life of Peter Stonsz, for which an application bearing a corresponding number as above is this day made to the Equitable Life Assurance Society of the United States. *Insurance subject to the terms and conditions of the policy contract, shall take effect as of the date of this receipt, provided the applicant is on this day, in the opinion of the Society's authorized officers in New York, an insurable risk under its rules, and the application is otherwise acceptable on the plan and for the amount and at the rate of premium applied for; otherwise the payment evidenced by this receipt shall be returned on demand and surrender of this receipt.*

"Dated at Pittsburgh, June 28, 1927.
"(Signed) CALVIN S. BOLSTER, *Agent.*"

This receipt, incorporated by reference in the application, determines the liability, if any, of appellant. It is in form a typical "binder," or "binding receipt" familiar in both fire and life insurance transactions. There is a great confusion of authority as to the effect to be given to such receipts. Because of the similarity of wording usually found in them, attempts have been made to generalize their operation. If these apparently conflicting authorities are examined, however, it becomes clear that these receipts are not capable of general treatment, but must be individually interpreted to give them the effect which the parties intended them to have in each case. The fundamental question is, what was

their intention? See *Reynolds v. Northwestern Mut. L. Ins. Co.*, 189 Io. 76; *New York Life Ins. Co. v. Babcock*, 104 Ga. 67.

The purpose of this clause, "insurance . . . shall take effect as of the date of this receipt" was to provide an inducement for the payment by appellee of the first premium in advance and to give preliminary protection to the insured until the issuance of the policy. Generally speaking an insurance contract is effective as of the date of its issuance unless a contrary agreement is made by the parties. As the insured should pay only for protection he actually receives, the first premium would be due as of the date that the protection commences. There is, however, a necessary delay from the time of the application to the time of the issuance of the policy. It is of advantage to the insured to be protected during that period, and to the insurer, not only to have the use of the first premium before it would be normally entitled to receive it, but also to secure definitely a client. It is usually customary for the parties to enter into a preliminary agreement looking toward the attainment of these objects for their mutual benefit. The insured believes that this binder is valid if he is an insurable risk. Sometimes it takes the form of a temporary contract of insurance, binding upon the parties until the carrier acts upon the application, whether it is accepted or rejected. See *Rossi v. Firemen's Ins. Co.*, 310 Pa. 242; *Queen's Ins. Co. v. Hartwell Ice, etc., Co.*, 7 Ga. App. 787; *Hubbard v. Insurance Co.*, 129 Io. 13. If clearly established, such an agreement is favorably regarded by the courts whether oral or written. *Reynolds v. Northwestern Mut. L. Ins. Co.*, supra; *Cooksey v. Mutual L. Ins. Co.*, 73 Ark. 117. In *De Cesare v. Metropolitan L. Ins. Co.*, 278 Mass. 401, it was held that the distinction sometimes drawn between the respective authority of fire and life insurance agents to bind their companies to such contracts did not exist where the applicant had passed his medical examination successfully, and where

the receipt given by the agent showed an intention to effect present insurance pending action by the carrier upon the application. If the parties so intend, therefore, an interim contract of life insurance may be made in this manner, which will be valid and binding on the carrier: See *Reynolds v. Northwestern Mut. L. Ins. Co.,* supra; *Hart v. Traveler's Ins. Co.,* 236 App. Div. (N. Y.) 309; *Albers v. Security Mutual Life Ins. Co.,* 170 N. W. 159 (S. D.) ; *Starr v. Mutual Life Ins. Co.,* 41 Wash. 228.

This question confronts us in the present case: Does the language of this receipt indicate an intention to create a temporary insurance for the time during which the approval of the application was pending? Two conditions are imposed upon which the insurance was to become effective as of June 28, 1927. The first is that the applicant must be, on that day, an insurable risk in the opinion of the home office; the second, that the "application is otherwise acceptable on the plan and for the amount and at the rate of premium applied for." The cases previously cited indicate a trend in the courts to construe the conditions liberally, and to treat receipts similar in wording to the one before us as binding during the interim regardless of the ultimate action of the carrier on the application. These decisions are based upon the assumption that if the receipt meant anything, no other result could have been intended by the parties, *for unless the insured was to be protected* against injury or death during the interim period there would be no advantage to him in paying his premium in advance. As was said in *Albers v. Security Mutual Life Ins. Co.,* supra: "If the company did not intend that there should be insurance effective pending the date of the application and the date of the approval of the risk and the issuance of the policy, then the company would be charging and obtaining the full amount of the premium for one year, while the period of actual insurance would be as many days less than one year as there were days intervening between the date of the application and the

approval." In other words, the insured would be paying for something which he did not receive.

Thus in *De Cesare v. Metropolitan Life Ins. Co.*, supra, although the application expressly stated: "no obligation is to be assumed by the company unless and until such application is so approved," the court said: ". . . the agreement in the receipt, when construed with the application, created a valid contract for temporary insurance effective upon acceptance of the application . . . and the fact that the agreement did not contemplate that any obligation would be assumed by the company unless and until the application should be approved does not require a different conclusion."

In *Hart v. Travelers' Insurance Co.*, supra, the receipt read, in part: "The Company shall have the right to disapprove such application and shall incur no liability thereunder until and unless received and approved by the Company at the Home Office . . ." No policy was ever issued to the applicant during his life. Nevertheless the court held: "He [the insured] undoubtedly thought he was getting some advantage by making this full payment at this time. He did not believe that by furnishing the premium in full in advance he was doing something to his disadvantage—paying money for a period when he was not insured at all . . . if the construction to be placed upon this binding receipt is not that Levy was thereby insured from the date of the binder until a formal policy was issued or the risk declined by the defendant, then it must be said that this binding receipt is at least ambiguous, and, if so, it should be construed against the company, it having been drawn up by the agent of the company upon its printed form."

In *Starr v. Mutual L. Ins. Co.*, supra, it was stated: "If there was to be no contract of insurance in any event until the application was approved . . . and a policy issued, it would seem entirely immaterial to the insured whether the contract related back to the date of the

application or not. If he lived until the application was approved and a policy issued, it would seem a matter of indifference to him whether he had been insured during the interim between the date of the application and the date of the issuance of the policy. On the other hand, if he died before the application was approved and the policy issued, his beneficiaries would derive no benefit from the issuance. The chief object of the provision would therefore seem to be to enable the insurance company to collect premiums for a period during which there was in fact no insurance, and consequently no risk."

The same thought is expressed in *Albers v. Security Mut. L. Ins. Co.,* supra, and *Reynolds v. Northwestern Mut. L. Ins. Co.,* supra. In the former case, recovery was permitted though the insured died before his application had been acted upon.

Under these authorities, the conditions imposed in this receipt would be treated as conditions subsequent. The company was bound to act either affirmatively or negatively on the application. The insured if an acceptable risk was entitled to a policy. If he was not acceptable appellant was required to so notify him, under the last clause of the receipt, in order that he could demand a return of his money. He was not notified, his application was accepted in a modified form, his money was retained, except for a portion of it that was returned as overpayment. These facts all indicate that the company had accepted the risk or at least that the liability for insurance created by the preliminary agreement had not been divested by rejection.

There are, of course, authorities which take the opposite position on this interesting question, and these will be referred to hereafter. It is not necessary to the decision of this case to pass upon this broader phase of the problem, for the suit is not upon the receipt, but upon the policy that was issued to appellee. The receipt is here considered only as it shows the terms of that policy relating to its effective date.

If this clause of the receipt was not intended to provide interim insurance to appellee as a separate and distinct contract from the policy to be issued, what is its effect? It is certainly not a mere nullity. By reason of it the insured was induced to pay his premium in advance. The intention may have been that it was to operate as a binder giving temporary insurance on the terms of the contemplated policy against injury or death as of June 28th, but only if the conditions mentioned were fulfilled. In other words, that they were conditions precedent to liability on the binder. This construction is sometimes given these receipts. See *Grier v. Mutual Life Ins. Co.,* 132 N. C. 542; *Insurance Co. v. Young's Admr.,* 23 Wall. (U. S.) 85; *Gardner v. North State Mut. L. Ins. Co.,* 163 N. C. 367; *Steinle v. New York Life Ins. Co.,* 81 Fed. 489. Secondly, it might be interpreted to be a preliminary agreement that the insurance policy when issued should be antedated to take effect as of June 28th: *New York Life Insurance Co. v. Abromietes,* 254 Mich. 622. The rules of offer and acceptance must provide the solution.

Appellee's application, considered with the receipt which it incorporates by reference, made this offer: (1) Appellant should insure appellee (a) against death, (b) with double indemnity if its cause should be accidental, and (c) against total disability; (2) the insurance should be effective as of June 28, 1927; (3) appellee should pay 20 annual premiums at the regular rate for such coverage, the first premium being estimated at $223.19.

Appellant contends that its refusal to issue a policy providing for double death indemnity, and its alteration of the estimated premium rate because of the hazardous occupation of the applicant, constituted a rejection of the offer in the application. It is urged a counter-offer was created in the policy delivered to the insured dated July 6, 1927, and until its acceptance July 11th, no contract of insurance existed. The offer was for a contract

of insurance with severable provisions for death, accidental death, and disability. The testimony discloses that in computing the premium, appellant treated the disability provision as one distinct item for which a certain amount was due; death benefits as another item to be paid for at a different rate, and double liability, a third item with a separate purchase value. These three items added together determined the total premium to be paid. There was no flat rate upon the policy as an entirety, but rather a combination of charges for three different forms of insurance coverage which it embraced.

In determining whether or not appellee is entitled to recover upon this claim, we need not concern ourselves with the provisions for death benefits, or the refusal of the company to provide double indemnity for death from accidental causes. Appellee claims $100 per month during the continuance of any total disability. The policy issued to him contains provision for disability exactly as applied for. The only apparent change was in relation to the rate. The premiums to be paid for the disability feature were "rated up" $37\frac{1}{2}\%$, but this did not constitute a variance of the terms of the offer, because it was testified by the agent Bolster that at the time the application was made it was understood that the occupation of appellee might make a difference with respect to the disability and double indemnity features of the policy. The sum paid was merely an estimated premium. The rate was not fixed at the figure submitted. The payment was tentative, it being understood that the rate was to be appellant's regular charge for contracts of that sort with persons in appellee's occupational class. The offer reserved the right to adjust the ultimate premium rate. The difference in rate from the application was not a variance of its terms. Appellant issued to appellee the disability insurance he applied for, it was accepted by him, and under the agreement made between them its effective date was June 28, 1927.

A condition of the receipt was that appellee be an insurable risk at the time the receipt was issued. Although he was not accepted as insurable for double indemnity, he was never rejected for disability coverage. The company by issuing the policy expressed its acceptance of appellee *as insurable against disability on the terms therein contained.* Appellant retained a portion of his original payment as the first premium, although if he was not insurable he was entitled to its return. *It does not attempt to deny its present obligation to the insured under the policy as issued.* It merely denies that the contract was effective on June 28th. If appellee was insurable for the purpose of a policy effective July 11th, he was also insurable for the purpose of the same policy, issued on the same date, but to take effect June 28th by agreement. Appellee had passed the examination by the insurer's physician, and no contention is made that the results of that examination were incomplete or unfair. If there was any rejection involved as to disability insurance it was a rejection of the estimated premium rate and not of the appellee as a bad insurance risk.

Even if we resolved the doubt as to the condition of appellee's offer relating to premiums in favor of the insurance carrier, which would be contrary to every rule of law in this Commonwealth, the conclusion is inescapable that the policy was in effect at the time of his injury. It must be remembered that every term of the contract made by the company was included in the original offer. Let us assume that appellee offered to contract only upon the rate for disability coverage estimated by the agent Bolster. The increase of that premium would then effect a change in a material element of the offer and make the issuance of the altered policy by appellant a counter-offer, which appellee could accept or reject in his turn. His acceptance is evidenced by his taking the policy as delivered and cashing the refund check forwarded to him without demanding the re-

turn of the balance of his payment. Under our present assumption, which the appellant contends is correct, there was thereby created a new contract.

But when was this contract effective? It could not take effect on July 6th, the date appearing on the policy, for this was not stated to be the effective date, and the contract had not yet been formed by the appellee's acceptance. Did it become operative on July 11th, the date upon which he signified his assent? Ordinarily, if the parties had not expressed their intention otherwise as to the point, this would be the time: *Insurance Co. v. Young's Admr.*, supra. But it must be noted that the original offer here named June 28th as the date at which the coverage should commence. Where a counter-offer is made, changing some of the terms of the original offer, those terms which are not expressly altered are presumed to be the same: See *Gray v. Foster and Mahon*, 10 Watts 280; *Cosgrove v. Woodward*, 49 Pa. Superior Ct. 228. Therefore the alleged counter-offer made by appellant and accepted by appellee, since it did not provide a new effective date, adopted the date of the previous offer by incorporation. If the carrier desired to change two terms of appellee's offer, both price and date, it should have informed the offeror of both changes, not merely of the increase in the premium rate. Nothing in fact was said on July 11th to appellee to indicate that the policy for disability was not to be effective as of June 28th, and it was not until more than one year after his injury that this position was taken. If there was doubt as to this point, which even appellant concedes, since it attempts to invoke a legal presumption to supply the intention of the parties as to the date, that doubt must be resolved in favor of appellee: *Western Ins. Co. v. Cropper*, 32 Pa. 351; *Hillman Transportation Co. v. Home Ins. Co.*, 268 Pa. 547. There is here, however, no necessity to apply legal rules of construction, for the intention of the parties that the contract should take effect on June 28th had been expressed.

The decisions most strongly relied upon by appellant differ from the present case in that in each of those cases the applicant for insurance died before the policy was delivered to him. Under those circumstances, of course, no contract was ever formed because the counter-offer had never been accepted. See *Insurance Co. v. Young's Admr.*, supra; *Northwestern Mutual Life Ins. Co. v. Neafus*, 145 Ky. 563; *Mohrstadt v. Mutual Life Ins. Co.*, 115 Fed. 81; *State ex rel. Equitable Life Assurance Soc. v. Robertson*, 191 S. W. 989. Here appellee had accepted the policy as issued and the contract by its terms then related back to June 28th.

Our conclusion on this point is further substantiated by the clause in the application itself wherein the insured agrees "That the policy issued hereon shall not take effect until the first premium has been paid during my good health; . . ." This is incorporated in the policy by specific reference: "This policy, and the application therefor, a copy of which is endorsed hereon or attached hereto, constitute the entire contract between the parties." It is the only provision therein referring to the effective date. Since, therefore, the first premium was paid on June 28th, during the good health of appellee, this clause affords another indication of the intention of the parties that the contract should become operative as of that date.

Appellant's second basis for refusing to pay this claim is the failure of appellee to give satisfactory proof of loss within sixty days as required. Appellee testified that the agent Bolster was apprised of the condition of his hands at the time that he delivered the policy, July 11th. This appellant denies, insisting that the extent of the injury was not made known to Bolster, and further, that he was not a proper agent to receive notice of loss. After the expiration of the notice period, appellee's wife on several occasions went to appellant's branch office at Pittsburgh, and spoke not only to Bolster but also to the divisional claims agent, Boyle, respecting the

payment of the disability annuities. At no time did either agent inform her or appellee that oral notice was insufficient, or that the period for making proof of loss had expired. There can be no doubt that Boyle should have explained the manner in which proof was to be made, since both appellee and his wife were of foreign birth, and are unfamiliar with our language. It is the duty of an insurance carrier, upon receipt of defective notice of loss, to point out that it is insufficient. See *Jenkins v. Franklin Fire Ins. Co.*, 282 Pa. 380; *Arlotte v. Nat. Liberty Ins. Co.*, 312 Pa. 442. The printed endorsement on the back of this policy instructed claimants to communicate at once with the nearest agency of the company concerning losses. Boyle, as divisional claims agent, was a proper official to receive such notice, and his failure to instruct appellee, who was obviously attempting to make a claim, that formal proof was required, lulled him into a false security. Appellant answers that Boyle believed that appellee was not totally disabled within the meaning of the policy, but this does not explain his neglect to indicate the formal insufficiency of the notice. Nothing in the contract requires proof to be made in writing.

More decisive of waiver, however, is the action of the company's agents in furnishing to appellee's attorney its official form adopted for such proofs. This form was supplied in July, 1928, appellant having knowledge that the claim was for an injury which had occurred in June, 1927. Several forms were executed, received by appellant's home office and returned for further information or correction. At no time during the course of these transactions did appellant's agents suggest that the claim was invalid because of noncompliance with its formal requisites. This is indisputable evidence of waiver. The company compelled appellee through his attorney to procure certain required statements from physicians who had examined him, and itself conducted an investigation. Appellee was put to trouble and the

expense of services of counsel, which could have been avoided, if appellant had intended to treat the delay in making claim as a breach. Regardless of the provision in the policy that all waivers must be made in writing, there can be no other construction placed upon appellant's acts: See *McFarland v. Insurance Co.*, 134 Pa. 590; *William Zoller Co. v. Hartford Fire Ins. Co.*, 272 Pa. 386; *Coursin v. Pennsylvania Insurance Co.*, 46 Pa. 323.

Judgment affirmed.

DISSENTING OPINION BY MR. JUSTICE MAXEY:

I cannot concur in the majority opinion unless the law gives me the authority to rewrite the contract between the two parties to this suit and that authority the law gives to nobody. It is one of the oldest established principles of law that in order for a contract to come into being between two parties, the acceptance of an offer must be identical with the offer. As the principle is stated in 6 R. C. L., page 608, section 31: "There must be no variance between the acceptance and the offer." (Citing numerous cases.) 13 C. J., page 281, section 86, expresses the same principle in this language: "An acceptance to be effectual must be identical with the offer and unconditional. Where a person offers to do a definite thing, and another accepts conditionally or *introduces a new term into the acceptance* [italics supplied], his answer is either a mere expression of willingness to treat or it is a counter-proposal, *and in neither case is there an agreement* [italics supplied]," (citing cases from 40 American jurisdictions, including Pennsylvania and the United States, and from five foreign jurisdictions, including England). In *Jaxtheimer v. Sharpsville Boro.*, 238 Pa. 42, 57, 85 A. 994, this court adopted the language of the last quotation as a correct statement of the law.

The majority opinion treats appellee's bid or offer for insurance as a severable one. It says: "Although he

[the appellee] was not accepted as insurable for double indemnity, he was never rejected for disability coverage. The company by issuing the policy expressed its acceptance of appellee *as insurable against disability on the terms therein contained* [these italics appear in the majority opinion]." There is not the slightest warrant or grounds for the assumption that the applicant made two offers or bids for insurance, one for "disability coverage" and one "for double indemnity" and yet that unwarranted assumption is the foundation of the majority opinion. If such assumptions can be judicially read into offers, the rule heretofore so universally respected, that an acceptance to be effective must be *identical* with the offer, will become meaningless verbiage and the entire law of contracts will soon reach a state of "confusion worse confounded." If that is to be the rule, A can offer to sell B two automobiles for $5,000 and if B replies, "I will take one at $2,500, a contract immediately springs into being between A and B for the purchase and sale of one automobile for $2,500, provided some court interprets A's offer as a "severable one."

The majority opinion says: "The offer [of appellee] was for a contract of insurance with severable provisions for death, accidental death and disability." If by "severable provisions" is meant that the offer for insurance consisted of three distinct or severable offers, the answer is that this is not so. If A says to an insurance company, "I want you to insure my house, my furniture and my garage" and the insurance company replies: "We will insure your home, but not your furniture and your garage," no contract has come into being between the parties. The offer in that case was not "severable" though the contract of insurance applied for, if granted, would contain distinct provisions for different coverages. If A applies for insurance on his house for $5,000 but for double that amount in case the house is destroyed by lightning, and the company tenders him a policy for $5,000, without the provision for double lia-

bility in case of destruction by lightning, no contract is consummated until A accepts the company's "counter offer" of the $5,000 policy without double indemnity in case of destruction of the property by lightning. It is scarcely necessary to cite authority for the proposition that if a policy issued by an insurance company varies from the policy applied for, no contract of insurance between the parties comes into being until the policy issued, which is in legal effect a counter-proposal, is accepted by the applicant. If authority is called for, see *White v. Empire State Degree of Honor*, 47 Pa. Superior Ct. 52, and *Mutual Life Ins. Co. v. Young*, 90 U. S. 85. In the former case the Superior Court of this State said: "The latter document [policy] contained conditions not embraced in the application and which affected the liability of the company and the character of the insurance. It is evident therefore that the relation between the defendant and the plaintiff's husband did not become that of insurer and insured until the assent of the latter was evidenced by the acceptance and retention of the certificate without objection." In the latter case, the Supreme Court of the United States said: "The receipt of the 5th of June was the initial step of the parties. It reserved the absolute right to the company to accept or reject the proposition which it contained. There was a necessary implication, that if it were accepted the response and acceptance were to be by a policy, in conformity with the terms specified in the receipt. . . . The applicant assented to the proposition contained in the receipt, but the company did not. . . . The mutual assent, the meeting of the minds of both patries, is wanting. Such assent is vital to the existence of a contract. The requisite assent must be the work of the parties themselves. The law cannot supply it for them. That is a function wholly beyond the sphere of judicial authority."

In the instant case when the applicant received the policy dated July 6th and accepted it, there first came

into being a contract of insurance between him and the company. The receipt dated June 28, 1927, cannot avail plaintiff for it vouchsafed him insurance *from that date only on condition,* i. e., "provided the applicant is on this day, in the opinion of the Society's authorized officers in New York, an insurable risk under its rules." This condition was never complied with. The applicant was accepted as a "risk" which the company would insure by the type of policy it issued to him in July but not such a "risk" as it would insure by the type of policy applied for. An applicant might be a good "insurable risk" from a medical standpoint but by reason of the hazards of his employment he might be an undesirable "risk" for a company to insure against death, with a double indemnity provided for in case he came to his death through accidental means. For example, aviators though possessed of good health are not "good insurable risks." In the instant case the applicant was never accorded by the defendant the status of "an insurable risk" under a policy containing a double liability clause. In other words, his employment as a miner made him a risk that defendant would not insure under the kind of policy he requested. The company was willing to accept him as "an insurable risk" only under the kind of policy it delivered to him on July 11th. Furthermore, the receipt also stated that the insurance "shall take effect as of the date of this receipt, provided . . . the application is otherwise acceptable on the plan and for the amount and at the rate of premium applied for." The fact is the application was not so "acceptable on the plan and for the amount and at the rate of premium applied for." If by "plan" is merely meant a twenty payment life plan, that condition was complied with, and if by "amount" is merely meant the face amount of the policy, that condition was complied with. But the policy applied for was a policy on his life "for $10,000 . . . *with double accident,*" and at a certain rate. The company refused to issue him such a policy. The policy ap-

plied for required a semi-annual premium of $223.19. The policy the company executed on July 6th and delivered on July 11th was for a different premium. When an "acceptance" of an offer varies from the offer as to "price," no contract comes into being. See 13 C. J., page 282, and *Minneapolis Ry. Co. v. Columbus Rolling Mill Co.*, 119 U. S. 149. Even· if the argument that applicant's offer was severable was a valid one (which it decidedly was not), the change in the premium named in the "offer" and the premium specified in the "acceptance" or, correctly speaking, the counter-offer, shows there was no meeting of the minds on the June 28th "offer" and hence no contract was ever entered into embodying the terms of that offer.

Plaintiff in this case had, of course, the burden of proof, and, before he could recover, it was incumbent upon him to prove that the conditions of the receipt had been complied with, to wit, that he was on June 28th such "an insurable risk" that the company later approved his application for the insurance applied for. This he failed to do. If the receipt which had been given the plaintiff on June 28th had been an *unconditional* "*binding receipt*," he would have an enforceable contract against the defendant, but the receipt given him was a *conditional* one and it is well settled that "if the receipt is so conditioned that no liability shall attach until the principal approves the risk, the acceptance is merely conditional, and is subordinate to the act of the company in approving or rejecting. Also, in life insurance a binding slip or receipt does not insure of itself, but when properly executed it protects the applicant against sickness or changes in health pending acceptance, if the risk is finally accepted, although, if the risk is validly refused, the slip ceases eo instanti to have any effect. And a receipt for a life insurance premium which states that if the application is approved the insurance will be in force from the date of the medical examination does not put insurance in force, pending a decision upon the

application. [Citing *Northwestern M. L. Ins. Co. v. Neafus,* 145 Ky. 563, 36 L. R. A. (N. S) 1211, 140 S. W. 1026]": Couch's Cyclopedia of Insurance Law, vol. 1, sec. 91, pp. 164-5.

As the record stands, plaintiff on June 28th applied for a certain type of life insurance policy. On July 6th the company refused to give the applicant the policy applied for and on July 11th it tendered him a different policy. This the applicant accepted. This policy went into effect on July 11th, *for the date a contract goes into effect is the date it is executed, delivered and accepted unless it expressly provides otherwise.* The majority opinion says: "It must be noted that the original offer named June 28th as the date at which the coverage should commence." The fact is, as the record shows, the appellee applied for insurance on that date and the receipt given him declares that the insurance shall go into effect on that date only if the precise policy applied for is issued. The policy applied for was never issued. Therefore, *the insurance applied for* never went into effect. A counter-offer in the form of a different kind of policy was on July 6th made the appellee and accepted by him on July 11th. The novel argument is made in the majority opinion that June 28, 1927, must be the effective date of the policy executed July 6, 1927, because "where a counter-offer is made changing some of the terms of the original offer, those terms which are not expressly altered are presumed to be the same: See *Gray v. Foster & Mahon,* 10 Watts 280; *Cosgrove v. Wodward,* 49 Pa. Superior Ct. 228. Therefore the alleged counter-offer made by appellant and accepted by appellee, since it did not provide a new effective date, adopted the date of the previous offer by incorporation." The fallacy in this argument is obvious. In his "offer" of June 28th appellee asked for a certain specific kind of insurance policy. By making the offer on June 28th the implication was that he wished the policy, if issued, to go into effect on that date. The agent of the company

gave a receipt which specifically declared that the policy would go into effect on that date only if the offer was *accepted as made.* It was not so accepted. A counter-offer was made in July and it carried also an implication of exactly the same force as the implication of appellee's "offer" of June 28th, to wit, that the policy counter-offered in July would go into effect on the date of its execution, if accepted by appellee. It was so accepted on July 11th. The two cases referred to in the above quotation from the majority opinion, instead of supporting the position they were cited to support, actually undermine it. In *Gray v. Foster & Mahon,* above cited, the offer*ee* added a material modification to the contract submitted before he signed it; the paper thus altered was taken and acted on by the offeror. It was held that he agreed to the modification. In the instant case, the offeror (the appellee) was not given a policy dated June 28th; he was given a policy executed July 6th, 1927, and which provided for semi-annual premiums to be paid July 6th and January 6th of each year. July 6, 1927, was in law the policy's effective date, unless it was otherwise specified and it was *not* otherwise specified. In *Cosgrove v. Woodward,* cited by the majority opinion, the Superior Court simply held that when defendants cabled plaintiffs: "We confirm the purchase," it "completed the contract" and was not affected by later cables. In other words, as soon as the minds of the parties met, a contract between them came into being. In the instant case, the minds of the parties did not meet, until the insurance company tendered the appellee a policy different from the one he applied for, and executed July 6, 1927, and the appellee accepted it. Then and not until then was appellee "covered" by appellant's policy of insurance.

On June 30th, when plaintiff was injured, there was no policy in effect between himself and the defendant. The receipt dated June 28th only provided in substance that the policy, if any, to be issued to the applicant

would go into effect *on June 28th* if certain things happened. These never happened. Therefore the insurance did not take effect as of the date of June 28, 1927.

The majority opinion lays great stress upon the fact that the applicant paid the agent the premium called-for by the insurance policy applied for. It needs but little reasoning and no citation of authority to show that an offer to buy something, accompanied by a deposit of the price one is willing to pay for that something, does not obligate the offeree to accept the offer and enter into contractual relations with the offeror. A valid sales contract can be entered into without the actual payment of any price and conversely the payment of a "price" does not make a contract until the offer which the price accompanies is accepted. If A offers to buy a home from B for $1,000 and deposits $1,000 with B, the deposit does not "close the contract." The receipt issued by the agent, in the instant case, to the applicant states as distinctly as is possible in language, that the "semi-annual premium of $223.19" was received only on "proposed insurance," for which an "application" was made, and that the insurance applied for would take effect "as of the date of this receipt" "provided the applicant is on this day in the opinion of the Society's authorized officers in New York, an insurable risk under its rules and the applicant is otherwise acceptable [1] on the plan, and [2] for the amount, and [3] at the rate of premium applied for; otherwise the payment evidenced by this receipt shall be returned on demand. . . ." That receipt made it crystal clear to the holder of it that his payment of the semi-annual premium was not a finality and did not put into effect on June 28, 1927, any insurance on the applicant until his application had been accepted by the home officers of the company, precisely on the terms he applied for. While the applicant was not "covered" by insurance while the officers of the company were deliberating as to whether or not they would accept his application in all its terms, his payment of the semi-annual

premium on June 28th would bring him some benefit if the application was later accepted and the effective date then made June 28, 1927. That earlier effective date would form an earlier basis for computing the surrender and loan values of the policy, and if his "age rating" changed during the period intervening the date of application and the date of acceptance, he would obviously benefit by the earlier effective date. But whether he benefited or not, his payment of the semi-annual premium on June 28th could not bind the company to insure him on that date unless the company agreed so to be bound and that it did not do, as we have pointed out, except on conditions which remained unfulfilled.

The majority opinion twice cites, in support of its conclusion that the receipt in the instant case effected temporary insurance from its date, the case of *De Cesare v. Metropolitan Life Ins. Co.*, 278 Mass. 401, 180 N. E. 154. That case wholly fails to sustain the majority position. In that case a receipt was issued to the applicant acknowledging the payment of premiums, which would be returned to him "(a) if application is declined, or (b) if a policy is issued other than as applied for and applicant declines to accept it." The receipt also states: "No insurance is in force on such application unless and until a policy has been issued thereon and delivered in accordance with the terms of such application except that when such advance payment is equal to the full first premium on the policy applied for and such application is approved at the Home Office of the Company for the Class Plan and Amount of insurance and at the rate of Premium as so applied for, then the amount of insurance applied for will be in force from this date, but no obligation is assumed by the company unless and until such application is so approved." *The application was approved* during the lifetime of the applicant at the home office for the class plan and amount of insurance and at the rate of premium so applied for. *Approval followed in terms of the receipt,* and therefore, of course,

under the terms of the contract assented to by both parties, the insurance was held to be effective from the date the receipt bore. In the instant case the company refused to issue the policy applied for and therefore the condition subsequent which and only which would have clothed the receipt with the status of an insurance protection to the applicant from June 28, 1927 (its date), never attained fulfillment.

Nor does the case of *Albers v. Security Mutual Life Ins. Co.*, 170 N. W. 159 (S. D.), cited in the majority opinion, support the position it is invoked to support. The "binding receipt" in that case contained no "proviso" at all in any way similar to the express proviso in the present case. On the contrary, paragraph 4 of the application read as follows: "That the company shall incur no liability under this application until it has been received and approved and a policy has been issued thereon, not until the premium has actually been paid to and accepted by the company, or its authorized agent during my life and good health notwithstanding any recital of such payment in the policy itself; provided that when the premium has been paid in advance to an authorized agent of the company and the company's binding receipt has been given by such agent the liability of the company shall be as stated therein." The last clause of this application plus the company's "binding receipt" given the applicant, showed that a contract for temporary insurance coverage had been entered into.

*Reynolds v. Northwestern Mutual Life Ins. Co.*, 189 Iowa 76, 176 N. W. 207, is also cited in the majority opinion. In that case the receipt issued to the applicant incorporated the following items of the application: ". . . (2) that if the amount of such premium is paid to the said company's agent at the time of making this application the insurance (subject to the provisions of the said company's regular form of policy for the plan applied for) shall be effective from the date of my medical examination therefor and such a policy shall be is-

sued and delivered to me or my legal representatives, provided the said company in its judgment shall be satisfied as to my insurability, on the plan applied for, on the date of such medical examination; and (3) that if said company shall not be so satisfied the amount of the premium paid shall be returned." The court declared that the receipt would be binding from its date if the applicant was found to be an insurable risk as of the date of his examination. Those were the terms of the agreement and when the company found that the applicant was not an insurable risk as of that date, the application was properly rejected. The applicant having died before any policy was issued, it was held that at the date of his death he was not "covered" by the insurance applied for.

The case of *Starr v. Mutual Life Ins. Co. of New York*, 41 Wash. 228, 83 Pac. 116, is no authority for the position the majority take. In that case a "binding receipt" was issued on payment of the first premium which was to make the insurance effective from the date stated thereon "provided this application shall be approved and the policy duly signed by the secretary at the head office of the company and issued." The policy was actually returned to the agent for delivery but the applicant having died before approval, the agent refused to deliver the policy. The court held that a binding contract of insurance was operative between the parties, for the applicant had been adjudged by the company's officers as an insurable risk and a policy had been issued to him. Nothing remained to be done by the company. The agent had been directed to make manual delivery of the policy to the insured. That he had failed to do so did not alter the fact that a valid contract of insurance existed between the company and the applicant.

In *Hart v. Travelers' Ins. Co.*, 236 App. Div. (N. Y.) 309, 258 N. Y. Supp. 711, also cited in the majority opinion, the company, in its "binding receipt" issued to the applicant, declared that "such insurance shall be in

force from the date of this receipt" but reserved the right to disapprove such application. The applicant died the day after the issuance of the receipt and before the company had manifested any disapproval of the application. It was held that under the facts of that case the insurance was in effect at the time of the applicant's death. That case differs from the one at bar in that the language of the two respective receipts differed widely and in the instant case the receipt clearly set forth that the policy applied for would go into effect June 28, 1927, only upon certain conditions subsequent, and these, as is undisputed, were never fulfilled.

I have not found in the court reports of any jurisdiction a single judicially sanctioned departure from the rule that payment of the first premium on a policy of insurance and the giving by the company's agent of a *conditional* receipt does *not* protect the applicant with insurance from that date *unless a policy is issued in exact accordance with the application* or unless temporary coverage is expressly provided for in the receipt. No such temporary coverage was provided for in the instant case. When a policy issued differs from the policy applied for, insurance takes effect from the date the substitute policy offered is *accepted by the applicant.* In *State ex rel. Equitable Life Assurance Society v. Robertson,* 191 S. W. 989, the form of receipt given was identical with the form given in the instant case. There the Supreme Court of Missouri said: "What was Kempf's proposition to the company? An application for insurance . . . on the plan stated in his written application; and the receipt given by the latter . . . provides that it is to take effect as of its date, but only upon condition [the same as in the instant case]. . . . The company rejected Kempf's application for the insurance on the terms as presented to it, and made a counter proposition to him. . . . The contract of insurance [evidenced by the receipt] was conditional, depending upon the company's acceptance of his as an insurable risk,

and *its approval of his application for the insurance as presented to it by him* [italics supplied]." To the same effect are the decisions and opinions in the following cases: *Gonsoulin v. Equitable Life Assur. Soc.,* 152 La. 865, 94 So. 424; *McNicol v. New York Life Ins. Co.,* 149 Fed. 141; *Ætna Indemnity Co. v. Crowe Coal & Mining Co.,* 154 Fed. 545; *MacKelvie v. Mutual Ben. Life Ins. Co.,* 287 Fed. 660; *Cooksey v. Mutual Life Ins. Co.,* 73 Ark. 117, 83 S. W. 317; *Long v. New York Life Ins. Co.,* 106 Wash. 458, 180 Pac. 479; *New York Life Ins. Co. v. McIntosh,* 86 Miss. 236, 38 So. 775; *Field v. Missouri State Life Ins. Co.,* 77 Utah 45, 290 Pac. 979; *Marks v. Hope Mutual Life Ins. Co.,* 117 Mass. 528; and *Haynes v. Midland Natl. Life Ins. Co.,* 60 S. D. 212, 244 N. W. 110.

The circumstance that the application signed on June 28th was attached to the policy executed July 6th, does not affect the fact that the policy delivered was not the policy applied for. The application was attached to the policy because the data it contained served an important function in bringing about the contractual relation which in July came into being. The "mind" of the applicant on June 28th was not "met" by the "mind" of the insurer on July 6th. The only meeting of the minds of the respective parties was when the applicant accepted the insurance policy tendered him on July 11th. That policy's effective date could not, unless it was therein expressly provided, be earlier than *the date it bore,* to wit, *July 6th,* 1927. Under *that* policy plaintiff can recover nothing for injuries he received six days before it was executed.

There is nothing ambiguous in the receipt issued to plaintiff on June 28, 1927. In unmistakable language that receipt declared that insurance should take effect on that date *if* the applicant was a "risk" that defendant's authorized officers in New York would accept for the kind of policy applied for and provided that the application is otherwise acceptable on the plan and for the

amount and at the rate of premium applied for. These conditions were not met. The situation is exactly as though the company had said to the plaintiff: "If we give you the precise policy you ask for, its effective date will be June 28, 1927; if we tender you a different kind of policy and you accept it, its effective date will be the date it bears." The company did not give him the policy he asked for; it gave him a different policy, dated July 6, 1927. That was its effective date. The policy expressly provided that its semi-annual premiums should commence July 6, 1927. When plaintiff accepted this policy that was the first time the minds of the parties to this negotiation had come to a concurrence upon the precise stipulations of a definite contract of insurance. Unfortunately plaintiff was injured before the policy went into effect. If he had been injured after the policy went into effect, no one would question the fact that the effective date of the policy was July 6th. For example, if the policy in question were a ten-year "term policy" and plaintiff received an injury on June 30, 1937, he would clearly be within the coverage of the policy and could successfully resist any contention that the policy went into effect June 28, 1927, and therefore expired on June 28, 1937, two days before the supposed 1937 accident giving rise to his claim.

It is true that we have recognized the rule that "if doubt exists as to the meaning of the language used in an insurance policy, it should be resolved in favor of the insured" *(Levinton v. Ohio Farmers Ins. Co.,* 267 Pa. 448, 110 A. 295), but as this court well said in *Urian v. Scranton Life Ins. Co.,* 310 Pa. 144, 151, 165 A. 21: "In a number of cases elsewhere, the court created the 'doubt' by a species of argument which would not be tolerated in any other kind of contract, and then, having thus found the 'doubt,' resolved it 'in favor of the insured.' . . . A rule which is paramount [is], 'where language is clear and unambiguous it cannot be construed to mean otherwise than what it says.' . . . Our

judicial system provides for an interpretation of contracts made by the litigants, and not to the making of contracts for them."

The language of the conditional receipt pleaded by plaintiff as the foundation of his claim is clear and unambiguous. Our function is to interpret it, not to attempt to re-write it for either party's benefit. In my judgment, the only interpretation of which it is logically and grammatically susceptible, legally bars plaintiff's recovery.