## Brooks v. United Benefit Life Insurance Company of Omaha, Nebraska

Before MacNeille, P. J., Milner and Waters, JJ.

*David S. Malis*, for plaintiff.

*John F. Thaete*, for defendant.

MacNEILLE, P. J., December 31, 1953.—We have before us for consideration 17 exceptions by defendant to the finding of the trial judge. Plaintiff instituted this action in assumpsit to recover the sum of $5,000 on two insurance policies written by defendant insurance company on the life of plaintiff's deceased hus-

band, Martin Brooks. The matter came on for trial without a jury and a comprehensive opinion was written by the trial judge in support of his finding for plaintiff. The exceptions essentially dispute the trial judge's conclusions as to the applicable law. Insofar as the exceptions are taken as to the findings of fact, they are without any merit since the facts were not in serious dispute at the time of trial.

On April 24, 1951, one Morris Safier, an admittedly duly authorized agent of defendant company, solicited decedent to purchase two life insurance policies for $2,500 each. Decedent thereupon signed an application called a "combination application", for two policies of life insurance and health and accident insurance combined. These policies were "non-medical" policies, there being no medical examination of the insured required or contemplated; the only requirement was that the company procure a favorable inspection report and recommendation by the district and home offices of the insurer. At the time the application was signed Safier requested payment of the annual premium in advance and to induce such payment he stated to decedent that if he so paid in advance he would have insurance coverage as soon as the premium was delivered to the Philadelphia office instead of from the date of delivery of the policies. Decedent therefore, at the time he executed the application, paid a full one-year premium in advance for a combined life and health and accident insurance. The check issued in payment was made payable to the order of defendant company in the sum of $294, $184 of which was the advance premiums for decedent's policies and $110 of which was the advance premium on health and accident policies simultaneously applied for by Wolf Brooks, decedent's father. The receipt of advance premiums was noted upon decedent's application.

Upon receipt of the advance premium check Safier gave decedent a signed receipt which appeared substantially as follows:

*Receipt*

MUTUAL BENEFIT
HEALTH and ACCIDENT                          4—24, 1951
ASSOCIATION            Received of Martin M. Brooks
      OMAHA      an application for a Form L MA200
                        Policy and Cash or Check for 184
                                                    Dollars

Should the Association decline to issue the insurance as applied for the Association hereby agrees to return the above sum to the applicant.

/s/   M. Safier, Agent

If the full premium is paid with the application and so recorded in the application and the Association shall be satisfied after investigation that the applicant was acceptable for the insurance applied for at the time the application was signed, the policy will be dated and effective according to its terms at 12 o'clock the day the application was received at the Association's State Branch Office or authorized District Office.

An identical receipt was issued to Wolf Brooks for a form 111 Policy for $110.

The above receipt, it will be noted, was not on a form of defendant company. United Benefit and Mutual Benefit are companion companies and Safier and the Clarke agency by whom he was employed were the authorized agents for both. United Benefit issued both life and health and accident policies, while Mutual Benefit wrote only health and accident insurance. It is admitted that Safier was a duly authorized agent of defendant company and that the receipt given by him described a policy which could not have been issued

by Mutual Benefit but was a combination life and health and accident policy which could only be issued by United Benefit. No testimony was offered by defendant to deny Safier's authority to issue a "binding receipt" and Safier himself was not called as a witness though he is still defendant's agent.

Decedent's application and accompanying check were received by defendant at its Philadelphia district office on April 25, 1951. The check was deposited for collection on April 25, 1951, and the endorsement thereon shows that United Benefit and Mutual Benefit used a rubber stamp endorsement for deposit under the endorsement of both companies. On April 28, 1951, defendant company procured an inspection report on decedent which apparently contained nothing unsatisfactory.

Decedent died unexpectedly on April 30, 1951, as a result of a coronary occlusion. In the latter part of May 1951 defendant delivered to plaintiff two policies of life insurance on the life of decedent. The terms of the policies were in accordance with those set forth in the application, with the exception that they have the issue date of May 10, 1951. It is conceded that plaintiff performed all conditions of the policies if they were otherwise effective when decedent died.

On the basis of the foregoing facts the trial judge held that the policies issued by defendant on the life of the decedent were in effect on April 30, 1951, the date of decedent's death. The opinion of President Judge MacNeille fully sets forth the legal bases for his conclusions and we concur in everything stated therein. Judge MacNeille stated:

"The receipt issued by Safier upon receiving the advance premium was a typical 'binder' or 'binding receipt'. Such receipts may be effective either to provide insurance coverage in the interim pending final action by the insurer on the application, regardless

of whether the application is finally accepted or rejected, or to provide insurance coverage as of the date of the application if the application be finally approved: Stonsz v. Equitable Life Assurance Society of the United States, 324 Pa. 97 (1936). Defendant contends that since the receipt was on the form of the Mutual Benefit Health and Accident Association, and not that of defendant company, it could not bind defendant. However, we do not regard this fact as of great significance. It is apparent that Safier, in issuing the receipt, purported to act as agent of the United Benefit Life Insurance Company, defendant herein. Decedent's application for insurance was addressed to defendant company. Only that company could issue a combination policy such as decedent was applying for. Therefore, if Safier was authorized by defendant company to issue such a receipt, then defendant must be bound by the terms of the receipt regardless of the fact that the name printed at the top of the receipt was that of Mutual Benefit rather than United Benefit. Defendant produced two witnesses in an attempt to establish that in 1951 defendant company did not issue binding receipts in applications for combination policies. However, both witnesses admitted that they were not entirely familiar with all of the various types of receipts issued by defendant company. Furthermore, it was admitted by defendant's witnesses that binding receipts were issued by defendant company in policies requiring medical examinations. It seems inconceivable, threfore, that defendant could have expressly restricted the powers of its agents to issue such receipts in non-medical policy applications. Defendant admitted in its answer that Safier was its duly authorized agent. We therefore hold that Safier, pursuant to his general authority, was authorized to issue a receipt binding defendant from the date the application was received at its district office."

Defendant persists in the contention that there is here an endeavor to bind it upon terms of a separate and distinct company; that the policies as issued and dated were mere counter offers. We certainly do not agree. The receipt given by Safier was perfectly valid and binding; there is no basis for assuming that he did not have the authority to issue it or for that matter that such receipts are not still being issued *currently* and on forms bearing the imprint of Mutual Benefit. There is no doubt that it is to be inferred that decedent was entitled to a receipt for his premium payment in advance; that Safier had the apparent authority to issue such receipt and that it is not particularly significant as to what name was printed on the receipt form. Defendant states over and over that the receipt given to decedent was that of Mutual Benefit, but it simply was not. The receipt given was that of United Benefit, a receipt which bore upon it an immaterial reference to Mutual Benefit. There has not been offered sufficient and satisfactory evidence that Safier did not have authority to give a receipt and a receipt in the form given and, indeed, it has actually been admitted that he was a "duly authorized agent" of defendant.

It is unnecessary to consider whether the policy as dated was a counter offer to decedent's application offer. This suit is not upon the policy as such but rather upon the binding receipt which, when issued, represented a completed agreement.

The trial judge in his opinion carefully considered the pertinent case of Stonsz v. The Equitable Life Assurance Society of the United States 324 Pa. 97 (1936). Defendant in turn relies heavily upon the opinion of Mr. Justice Swayne in Insurance Company v. Young's Administrator, 90 U. S. 85 (1874), in the contention that the receipt in this case was but an offer to purchase insurance on the terms stated and that such offer terminated upon the death of decedent-

offeror: Helfenstein's Estate, 77 Pa. 328, 331 (1875) ; and that the policies as issued and dated were only counter offers which had to be accepted by decedent. In the Young case the court stated (at page 106) :

". . . The receipt of the 5th of June was the initial step of the parties. It reserved the absolute right to the company to accept or reject the proposition which it contained. There was a necessary implication, that if it were accepted the response and acceptance were to be by a policy. . . . But it was clearly within the power of the company, under the condition expressed, wholly to reject the application, . . . or to accept the proposition with such modifications of the terms specified, . . . as it might see fit to prescribe. . . ."

In the Young case Young applied for life insurance on June 5, 1867, and gave the agent his note for the first premium; he received a receipt which provided in part as follows: "said policy of insurance to take effect and be in force from and after the date hereof, provided that said application shall be accepted by the said company; but should the same be declined or rejected by said company, then the full amount hereby paid shall be returned to said applicant upon the production of this receipt."

The policy issued was dated April 5, 1867, *prior* to the date set forth in the application, and was sent to and received by the agent on August 2, 1867, and he notified the applicant of its arrival on August 8, 1867. On September 20, 1867, Young died of gunshot wounds inflicted on him on August 21, 1867, without having taken any further action as to the policy. The court held that the change in issue date was a substantial change constituting a counter offer and that the receipt was merely an unaccepted offer.

The Young case was carefully and thoroughly considered by the Circuit Court of Appeals for the Second Circuit in Gaunt v. John Hancock Mutual Life Insur-

ance Company, 160 F. 2d 599, 602, in an opinion by Judge Learned Hand.

In the Gaunt case, the application and advance premium payment were made on August 3rd. The policy required a physical examination and Gaunt was variously examined and it was found by the trial judge that medical approval would have been forthcoming had Gaunt lived. However, on August 25th Gaunt was killed and defendant's home office never finally approved the application. The circuit court reversed the district court's dismissal of the complaint and directed that judgment be entered for the face amount of the policy.

Judge Hand definitely disposed of the Young case in the following language:

"Situations very close aboard have arisen not infrequently, although the actual words have necessarily varied, so that it is hardly fair to say that any decision is quite on all fours. However, the important question is how far the condition of subsequent approval shall prevail over the promise of immediate coverage as soon as the insured has paid his premium and has passed his physical examination. A number of the decisions rely upon Insurance Company v. Young's Administrator; but it really does not touch the issue. In the first place, Homans, the insurer's agent who took the premium, was apparently not authorized to bind the company at all, but only to transmit the application to the home office; as a general agent, he was not one of those officers whom the insurer had authorized to 'sign for' premiums. . . . Be that as it may, Young did not die until after the company had rejected the application and had tried to substitute another which he never accepted. . . . Those decisions are scarcely in point where the 'application', or the receipt does not say expressly, but only by implication, that the coverage shall begin when the applicant

had been examined; but there are unquestionably decisions which excuse the insurer when it does. The law of New York is in doubt. The first case was Hart v. Travelers' Ins. Co. which was in favor of the insured and which the Court of Appeals affirmed, though without any opinion. Moreover, this was followed by Buono v. Prudential Ins. Co., which accepted it as authoritative. However, both these decisions were themselves soon followed by three others in the Appellate Divisions of the First and Second Departments, all of which went the other way. It is true that they distinguished [the Hart case] by the language of the application, and [the Buono case] on the ground of estoppel; but with deference it is hard to see how all the decisions can stand, and despite the affirmance of Hart v. Travelers' Ins. Co., supra, we should not be warranted in holding that the point is settled. On the other hand, in Duncan v. John Hancock Mutual Life Ins. Co., Stonsz v. Equitable Life Assurance Society of United States, and Western & Southern Life Ins. Co. v. Vale, the insured won; and indeed in Albers v. Security Mutual Life Ins. Co., the court went further in his favor than we need go here."

Defendant's contention that no physical examination was required here as in the Gaunt case is a distinction without merit and indeed renders this case the stronger of the two. Decedent applicant was "acceptable for the insurance applied for at the time the application was signed" and defendant was contractually bound to perform its promise that "the policy will be dated and effective" when the application was received at the district office. Far from being a counter offer, the dating of the policy other than as of April 25th was a breach by defendant of the agreement set forth in its binding receipt.

We are in full agreement with the trial judge that the Stonsz case sufficiently governs and guides the

finding for plaintiff in this matter. See note 81 A. L. R. 327, supplemented in 107 A. L. R. 194. There is no necessity for further repeating what has already been so fully and adequately set forth by the trial judge.

Wherefore, we enter the following:

### Order

And now, December 31, 1953, defendant's exceptions to the finding heretofore entered on behalf of plaintiff and against defendant are dismissed, and judgment is hereby entered in favor of plaintiff, Sophie Brooks, and against defendant, United Benefit Life Insurance Company of Omaha, Nebraska, . . . in the sum of $5,000, with interest thereon from June 1, 1951.