Patricia Ann STIMMEL, a minor, by George H. Stimmel, her guardian

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA.

Civ. A. No. 25854.

United States District Court
E. D. Pennsylvania.

June 16, 1964.

Martin H. Philip, Slatington, Pa., Jack E. Feinberg, Richter, Lord, Toll & Cavanaugh, Philadelphia, Pa., for plaintiff.

George M. Brodhead, Rawle & Henderson, Philadelphia, Pa., for defendant.

GRIM, District Judge.

On an application form dated April 21, 1958, George T. Stimmel applied for life insurance from the defendant for himself and his family. Along with the application, Stimmel paid to defendant's agent $10.64 which was the full amount of the first premium for the type of insurance applied for.

Upon its receipt of the application, defendant caused an investigation of Stimmel to be made and an investigation report to be submitted to it. After receipt of this report, the company, by a decision at its home office in Newark, N. J., rejected the application for the type of insurance requested because Stimmel had a reputation for fast automobile driving.[1] However, the company decided that it would offer to insure Stimmel with another type of life insurance with a special class rating for which a higher premium was required.[2]

The rejection by the defendant of Stimmel's application for insurance took place on May 1, 1958, and an insurance policy representing the type of insurance for which defendant was willing to insure Stimmel was prepared on May 2, 1958, but it was never delivered to Stimmel or accepted by him. Stimmel died on April 30, 1958, as the result of an accident. Defendant's employees in the home office who had rejected Stimmel's application did not know of his death when they rejected his application on May 1, 1958.

1. The reference to "poor driving habits" and reputation for fast driving is contained in the investigation report which is attached to the Stipulation of Facts on which this case is based and marked Exhibit "E". The Stipulation of Facts states that defendant's underwriter rejected Stimmel's application "because of the facts disclosed in the inspection report."

2. Stimmel applied for a "Family Monthly Debit Ordinary Plan" in the face amount

of $3,000.00 with a $10,000.00 Twenty Year Decreasing Benefit Term Insurance Rider, double indemnity provision and a monthly premium rate of $10.64. The company was willing to issue to Stimmel a "Family Ordinary Plan Policy" in the face amount of $5,000.00 with a $10,-000.00 Twenty Year Decreasing Benefit Term Insurance Rider and double indemnity provision, but with a Special Class 1 rating which required a monthly premium of $11.63.

Plaintiff, Patricia Ann Stimmel, a named beneficiary, has brought this suit on the contention that the life insurance went into effect as soon as George T. Stimmel signed and delivered the application together with the first premium to the defendant's agent and that, consequently, the insurance was in effect when Stimmel died and defendant company owes the plaintiff beneficiary the amount of life insurance applied for. Defendant, on the other hand, contends that the insurance was not in effect when Stimmel died and that, consequently, it owes nothing to plaintiff except the amount of the first premium in the sum of $10.64, which had been paid to it.

Both plaintiff and defendant have moved for judgment in their favor. The facts have been stipulated.

The application for the insurance provided:

"* * * [E]xcept as may be otherwise provided in the Conditional Receipt Form * * * no insurance shall take effect unless a policy is issued by the Company and delivered to and accepted by the proposed Insured and the full first premium thereon is paid * * *."

Incorporated by reference into the application is another document described as "the Conditional Receipt Form". This conditional receipt form provided:

"If the above payment [the $10.64 first premium] is made * * * and if the required and completed Part 1 and * * * Part 2 of the application and any medical examination, also designated as Part 2, and such other information as may be required by the Company are received by the Company at one of its Home Offices and if the Company after the receipt thereof determines to its satisfaction that the proposed insured, his wife and all dependent children proposed for coverage were insurable on the latest of the dates of said Parts 1 and 2 and said medical examinations on the plan, for the amount, for the benefits and at the premium rate applied for, the insurance in accordance with and subject to the terms and conditions of the policy applied for shall take effect as of the latest of the dates of the required and completed Parts 1 and 2 and any medical examinations required by the Company * * *

"In all cases where the insurance does not take effect in accordance with the preceding paragraph, no insurance shall take effect and the above payment will be refunded by the Company unless a policy is issued by the Company and delivered and accepted by the proposed insured * * * Any delay in refunding the above payment shall not be construed to create a contract of insurance or any liability on the Company except for a return of the above payments * * *." (brackets added)

■ The plain and unambiguous meaning of the conditional receipt is that if the company, after certain information has been received by it at one of its home offices, determines to its satisfaction that the applicant and other members of his family are insurable, then and only after this determination of insurability has been made will there be any insurance.

Since no policy was issued by the company for the type of insurance requested nor received and accepted by the applicant, no contract of insurance was in effect under the terms of the application at the time of the applicant's death. Likewise since no determination of insurability for the plan, amount, benefit and premium rate applied for had been made by the company in accordance with its rights under the conditional receipt at the time of Stimmel's death, and since Stimmel in fact was not insurable on the plan and for the amount, benefit and premium rate applied for, no contract of insurance was in effect at the time of Stimmel's death.

■ The willingness of defendant to insure Stimmel at a higher premium rate does not make defendant liable in the

present case. The insurance plan offered by the company was different from that which the applicant had requested; the applicant had never applied for nor accepted the insurance which, but for his death, might have been offered to him. The company merely had before it Stimmel's application for the type of insurance for which he had applied. This it rejected. It did nothing more than decide that it would offer Stimmel another more expensive type of insurance; no such offer of insurance was ever communicated to Stimmel nor accepted by him.

Plaintiff contends that the present case is controlled by Stonsz v. Equitable Life Assurance Society, 324 Pa. 97, 187 A. 403, 107 A.L.R. 178 (1936). The facts of the Stonsz case, however, are distinguishable.

In the Stonsz case, the plaintiff on June 28, 1927, applied for type "A" insurance, which provided death benefits with double indemnity and annuity payments for disability. In return for the payment of the estimated first premium on this insurance, plaintiff received a receipt, which for present purposes contained the same provision (insurance shall take effect as of the date of application) as the conditional receipt in the present case. The insurance company in the Stonsz case decided that because of plaintiff's dangerous occupation, it would not extend to him type "A" insurance, but was willing to and did issue to him a policy for type "B" insurance, which provided death benefits without double indemnity and disability provisions exactly as applied for but at an increased premium rate. The company delivered this type "B" insurance policy to Stonsz who accepted it on July 11, 1927. Stonsz was injured on June 30, 1927, after the date of application for type "A" insurance, but prior to the date that he accepted the company's offer of type "B" insurance. He was permitted to recover on the type "B" insurance policy for these injuries.

The court held that a contract of insurance for type "B" coverage had been made between the plaintiff and defendant. The court further held that since the type "B" insurance policy did not specifically provide an effective date when insurance coverage would commence, it incorporated and adopted the effective date of coverage specified in plaintiff's application for type "A" insurance. Accordingly, the contract of insurance related back to and insurance coverage commenced from the date of plaintiff's application.

In the case before this court, we are not concerned with determining when an admittedly existing contract of insurance was to take effect, but whether in fact a contract of insurance ever came into existence. The Stonsz case is clearly distinguishable.

Plaintiff also relies on McAvoy Vitrified Brick Co. v. North American Life Assurance Co., 395 Pa. 75, 149 A.2d 42 (1959). In McAvoy, the alleged insured had applied for a $200,000 life insurance policy and at the same time had paid $2,966.75, the amount of the first year's premium on the policy requested. McAvoy died, and following his death, the company declined to issue the requested policy on the ground that under its rules the application was for too large an amount of coverage. At the time of the application and payment of the first premium, an "Interim Assurance Certificate" was given to the applicant. The certificate provided in pertinent part:

" * * * [T]he assurance * * shall take effect if and when the company's authorized officers * * * shall determine (1) that the life to be assured was an insurable risk under the general practice * * * and (2) that the application is acceptable for an amount not to exceed that which the company accepts under the regular rule without reassurance on the plan applied for at the rate of premium applicable to the assurance applied for. Should the assurance take effect under this certificate, it shall thereupon be deemed to have taken effect from the date of ·

the medical examination or declaration in lieu thereof * * *."

Construing this interim certificate the court said:

"But the certificate is so worded as to indicate further that the coverage is subject to the condition that the applicant be found by the company's officers to be an insurable risk on the date of the medical examination. This we construe to refer to the applicant's physical condition."

The application was rejected not because of the applicant's physical condition, but because the amount of insurance requested was greater than the company wished to issue to this applicant. Moreover, the court after pointing out that the certificate by its very title was one for interim insurance, held that the evidence demonstrated that the contract was entered into with knowledge on the part of the company's representative of the amount of insurance being applied for, with knowledge of the company's general practice in this respect and with authority to enter into such an insurance contract. Accordingly, a binding contract of temporary insurance was in existence at the time of the issuance of the interim certificate. The case is clearly distinguishable.

The other cases cited by plaintiff also are distinguishable on their facts and need not be discussed.

This is a non-jury case and, therefore, findings of fact and conclusions of law are required. Fed.R.Civ.P. 52(a). All the facts have been stipulated. The court adopts the stipulated facts as its findings of fact. This opinion will constitute its conclusions of law.

### ORDER

And now, this 16th day of June, 1964, plaintiff's motion for judgment in her favor is denied, except that the Clerk of the District Court is directed to enter judgment in favor of the plaintiff in the sum of $10.64 with interest thereon at six per cent per annum from April 21, 1958.