Irene Hart, Appellant, v. The Travelers Insurance Company, Respondent.

Second Department, July 13, 1932.

310

*Frederic G. Rita* [*Joseph A. Reilly* with him on the brief], for the appellant.

*Bernard J. McGlinn* [*William J. Moran* with him on the brief], for the respondent.

YOUNG, J. The action is brought by the plaintiff to recover upon an alleged contract of insurance in her favor as beneficiary upon the life of one William P. Levy. The complaint alleges that on August 15, 1927, the defendant issued to plaintiff its binding receipt, whereby, for the consideration therein expressed, it insured the life of said Levy for the sum of $5,000, effective on that date.

On the following day, August 16, 1927, said Levy died. The defendant refused to pay. Upon the trial the defendant rested upon plaintiff's case, and the only point involved upon this appeal is as to the sufficiency of plaintiff's complaint. The writing referred to as a binding receipt and upon which plaintiff's action rests is as follows:

" TRAVELERS INS. CO., B'KLYN BRANCH,
" 159 Remsen Street,
" Phone: Triangle 0400.
" Binding Receipt — The Travelers Insurance Company
" 4192051

" Received of Irene Hart for App. of Wm. P. Levy subscriber to the application for life insurance in The Travelers Insurance Company bearing the number imprinted upon this receipt, the sum of One Hundred & One 95/100 Dollars in current funds upon the following terms and conditions:

"*First.* If the money for which this receipt has been given is sufficient to pay in full the first premium upon the contract of life insurance issued to such subscriber, such insurance shall be in force from the date of this receipt; if less than the premium, the insurance under such contract shall be in force from the date of payment of the balance of the premium while such subscriber is in good health and provided payment is so made within sixty days from the aforesaid date of acceptance.

"*Second.* The Company shall have the right to disapprove such application and shall incur no liability thereunder until and unless received and approved by the Company at the Home Office and the full premium for the contract issued thereupon shall have been actually paid to the Company during the lifetime and good health of such subscriber.

"*Third.* This receipt will not be binding upon the Company if issued for any sum other than that declared by such subscriber in such application to have been paid.

"*Fourth.* The sum above mentioned will be returned on surrender of this receipt to the Company, provided that a contract of insurance be not issued upon the application within sixty days from the date hereof.

"Date Aug. 15, 1927.

"LESTER J. RENDICH,
"*Agent.*

"45223 New York.— Wis."

The plaintiff, appellant, contends upon this appeal that the plain and obvious meaning of this document and the meaning that the defendant intended it to have is that Levy was, by virtue of the binding receipt — the first premium having been concededly paid in full at the time — insured from the date of the receipt, namely, August 15, 1927, until a formal policy of insurance was issued by the defendant or until the risk was declined by the defendant. The respondent contends, as was held by the trial court, that Levy was not insured at all until his application for the insurance was accepted by the company. This, it is conceded, never happened. The respondent points to the second subdivision of the binding receipt, which states that the company shall have the right to disapprove the application and shall incur no liability thereunder until and unless received and approved by the company at the home office, etc., and, as showing this intention, the respondent also calls attention to the fourth subdivision of the binding receipt, which provides that, if no contract of insurance be issued upon the application within sixty days, the premium will be returned to the applicant.

Appellant's counsel cites but one life insurance case in support of her contention — *Starr* v. *Mutual Life Ins. Co.* (41 Wash. 228). The receipt given in the *Starr* case was as follows:

" *Nov.* 30, 1903.

" Received of Martin Luther Starr, five and no 100 dollars to apply on life policy for $2,000 in Mutual Life Ins. Co. of New York. Also his note to be paid to said Company Jan. 30th, 1903, for $76.22, bal. on first half of semi-annual premium. Policy to take effect from date."

" J. W. PANTALL,
" *For Mutual Life Ins. Co. of N. Y.*"

In that case the application was on a printed form and the blanks had not been filled in, while the receipt above referred to was wholly in writing. The application is not set forth in full, but from the opinion rendered it appears that the application contained a provision that there was to be no contract of insurance in any event until the application was approved at the home office and a policy issued thereon. The opinion rendered by the Washington court, so far as material, is as follows: " By the death of Starr the subject-matter of the contract of insurance ceased to exist, and at that moment there was a contract of insurance or there was none. The approval or rejection of the application after that time would be ineffectual for any purpose. The object of the second provision of the application, above quoted, is not entirely clear, especially from the standpoint of the insured. If there was to be no contract of insurance in any event until the application was approved at the home office and a policy issued thereon, it would seem entirely immaterial to the insured whether the contract related back to the date of the application or not. If he lived until the application was approved and a policy issued, it would seem a matter of indifference to him whether he had been insured during the interim between the date of the application and the date of the issuance of the policy. On the other hand, if he died before the application was approved and the policy issued, his beneficiaries would derive no benefit from the insurance. The chief object of the provision would therefore seem to be to enable the insurance company to collect premiums for a period during which there was in fact no insurance, and consequently no risk."

Appellant also stresses the fact that the second subdivision of the binding receipt merely provides that the company shall have a right to disapprove of the application, and shall not be liable *under the application* until its approval by the company; that the special agreement contained in the first subdivision is not mentioned at

all, and it is argued that it is plain from this that the defendant intended the plaintiff to believe that the insurance for which she paid on the spot was actually effective on that date; that either the defendant gave this receipt intending to be bound at once or intended to work a fraud upon the plaintiff.

The counsel for the defendant, respondent, cites a number of cases which discuss the effect of a " binding receipt." None of them is in the form of the receipt under consideration. Counsel states that the leading case construing a binding receipt is *Insurance Co.* v. *Young's Administrator* (90 U. S. [23 Wall.] 85). The receipt in that case was as follows:

" THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK.

" Received, San Francisco, June 5th, 1867, from McPherson Young, of San Francisco, California, $99.30, being the first quarter-annual premium on his application for a policy of insurance of the Mutual Life Insurance Company of New York, for the sum of $5000 on the life of said Young, payable at forty-five or death, and premiums paid up in full in ten years; said policy of insurance to take effect and be in force from and after the date hereof, provided that said application shall be accepted by the said company; but should the same be declined or rejected by said company, then the full amount hereby paid will be returned to said applicant upon the production of this receipt.

" For the Mutual Life Insurance Company,
" H. S. HOMANS,
" *General Agent for the Pacific Coast.*"

With respect to this receipt, the court said as follows: " The receipt of the 5th of June was the initial step of the parties. It reserved the absolute right to the company to accept or reject the proposition which it contained. There was a necessary implication, that if it were accepted the response and acceptance were to be by a policy, in conformity with the terms specified in the receipt as far as they extended, and beyond that, in the usual form of such instruments as issued by the company. But it was clearly within the power of the company, under the condition expressed, wholly to reject the application, without giving any reason; or to accept the proposition with such modifications of the terms specified, and of the usual conditions of such policies, as it might see fit to prescribe. The entire subject was both affirmatively and negatively within its choice and discretion. The acceptance was a qualified one, and there was none other. * * * The policy was, therefore, no more a contract than the receipt. Both had the same fatal defect, the want of the assent of one of the parties."

In *Marks* v. *Hope Insurance Company* (117 Mass. 528) the binding receipt provided as follows:

" BOSTON, *January* 10, 1870.

" Received from Joseph Marks, ten and fifty one hundredths dollars, for which (provided the application is approved at the home office) I agree to furnish him a fifteen years' endowment policy upon his life, for five thousand (5000) dollars, from the Hope Mutual Life Insurance Co. of New York, within thirty days from date, or if the application is declined, to return the above amount to him or his order, on demand and return of this receipt. It being expressly understood and agreed that no liability is assumed by the company, unless the said risk is approved and a policy issued at the home office in New York.

" JAMES SIMPSON,
" *General Agent.*"

The court (at p. 532) held: " Assuming that the corporation could contract to insure otherwise than by a policy in the usual form and payment of the premium, and that Simpson had full authority so to contract, and also that this writing was intended to bind the corporation and not Simpson personally, we are unable to give to the writing any effect except as an agreement to return the money received unless a policy should be issued and furnished to the plaintiff within thirty days. It cannot operate as a present insurance for thirty days, or until a policy should be furnished, because that is not its purport."

Other cases are cited where it was held that there was no agreement on the part of the insurance company, by reason of the receipt given, to assume any risk until the application was accepted; but, so far as shown, none of the receipts involved was like the one in the present case.

Defendant's counsel argues that the first subdivision of the binding receipt means that, the first premium having been paid in full, when the policy should be issued later it would bear the date of the binding receipt, but this would not be to the advantage of the insured. It would be to his disadvantage, for he would be paying for insurance for a period during which he was not insured at all, namely, from the date of the binding receipt to the tim when the policy should be issued. It would be more advantageous to him to keep his money and pay when the policy was ready to be delivered. This, I am sure, was not the intention of this binding receipt, which was a printed form prepared by the company. Undoubtedly it was to induce the insured to pay the full premium at the time the receipt was to be given. He undoubtedly thought he was getting some advantage by making this full payment at

this time. He did not believe that by furnishing this premium in full in advance he was doing something to his disadvantage — paying money for a period when he was not insured at all. The insurance company now states in effect that the object of this provision was to enable the insurance company to collect premiums for a period during which there was no insurance and consequently no risk. By the first subdivision of this binder the company agreed that, if the full premium was paid when the binder was signed, the *insurance would be in force* from the date of the receipt. The money having been paid, there was a complete contract between the parties, and if this is so, this action may be maintained. Furthermore, if the construction to be placed upon this binding receipt is not that Levy was thereby insured from the date of the binder until a formal policy was issued or the risk declined by the defendant, then it must be said that this binding receipt is at least ambiguous, and, if so, it should be construed against the company, it having been drawn up by the agent of the company upon its printed form.

I, therefore, advise that the judgment be reversed on the law, with costs, and judgment directed in favor of the plaintiff for $5,000, with interest from August 16, 1927, with costs.

CARSWELL and TOMPKINS, JJ., concur; LAZANSKY, P. J., and KAPPER, J., dissent.

Judgment reversed on the law, with costs, and judgment directed in favor of plaintiff for $5,000, with interest from August 16, 1927, with costs.