LILLIAN HOLLAND, Respondent, *v.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Appellant.

Second Department, April 18, 1938.

*George W. Riley*, for the appellant.

*Julius L. Schapira*, for the respondent.

TAYLOR, J. The policy in suit is a twenty-payment life policy for $2,000, and default was made in payment of a premium after premiums had been paid for eighteen and a quarter years. The insured died five days after the default occurred.

The policy provides three separate options to the policyholder in case of default after premiums have been paid for three years. Only option A is involved here, since options B and C depend upon action by the policyholder, and no such action was taken in this case. Option A provides that in case of default, without action on the part of the holder, the policy will be continued for its value in participating paid-up life insurance. By a table printed in the policy, the value of participating paid-up life insurance is fixed according to the age of the policy, less any indebtedness secured by the policy. This amount for a policy for $2,000 on which premiums had been paid for eighteen years is $1,796, less any indebtedness secured by the policy, in this case $681.87, leaving a net value of paid-up insurance of $1,114.13. A later provision in the policy, to the effect that the paid-up insurance under option A shall be such as can be purchased by the cash surrender of the policy, less any indebtedness secured thereby, as a single premium, is an attempt to limit or modify the provision made in option A, fixing the amount of paid-up insurance under that option; but this later provision cannot be given that effect. (*Hart* v. *Travelers Insurance Co.*, 236 App. Div. 309; affd., 261 N. Y. 563.) Nor could the policy loan agreement have that effect, not only because of the ruling in the cited case, but because the assignment by its terms is subject to the provisions of the policy, including those relating to option A.

After the statement in the table of non-forfeiture values of the amount of the paid-up participating insurance to which the insured was entitled at the eighteenth year, there follow, on subsequent pages, some obscure and ambiguous provisions relating to surrender value and paid-up insurance under option A. The average person insured could gather no meaning from these provisions that would affect his rights given under the table and the provisions of option A. The natural interpretation would be that loans will be deducted from the sum due on the paid-up participating policy. This ambiguous language the insurer seeks to construe in its own favor so that the total loan and interest, together with the amount it proposes to pay to the beneficiary, will be a sum materially less than the amount of premiums actually paid by the insured, on which an additional sum of interest has been gained by the company. This in spite of the fact that the insured died much earlier than his natural expectancy of life.

Where a policy, written in the language of the insurer, is ambiguous in its terms, the construction will be in favor of the insured, not of the insurer. (*Hart* v. *Travelers Insurance Co., supra.*)

The order of the Appellate Term should be affirmed, with costs.

LAZANSKY, P. J., and DAVIS, J., concur; ADEL, J., with whom CARSWELL, J., concurs, dissents, with memorandum.

ADEL, J. (dissenting). The language of the policy is not obscure or ambiguous; and, indeed, its provisions are those required by statute. (Insurance Law, §§ 88 and 101.) That language or phrasing which the majority seems to deem ambiguous parallels the phrasing in the statute, for which manner of expression the insurer may not be held responsible. Section 88 is not controlling, because the policy was not issued by a domestic company (*Cummings* v. *Phœnix Mut. Life Ins. Co. of Hartford*, 250 App. Div. 336, 338), but the policy, nevertheless, conforms to the requirements of that section. Section 101 of the Insurance Law is applicable to the policy in suit, and it is apparent that the policy provisions conform to that section. The policy provides that upon default in payment of premium the insured is entitled to paid-up insurance in the amount that will be purchased by the " surrender value as herein defined." The formula, or method, of arriving at the surrender value is unavoidably expressed in terms that may seem technical or complex to the mind not ordinarily concerned with actuarial matters, but the constituent elements are plainly enumerated; and in clear, unambiguous language the policy provides that the surrender value is the full reserve, plus accumulations, " less any indebtedness to the Company hereon or secured hereby." Such value has been found to be eighty-five dollars and thirteen cents. The beneficiary, therefore, is entitled to the amount of paid-up insurance purchasable with eighty-five dollars and thirteen cents as the net single premium. This amount is $203.97, and has been tendered by the company. It is worthy of note that this method of computation, so clearly stated in the policy, is the precise method required by section 88 of policies issued by domestic companies.

If it is proper to read the loan assignment in conjunction with the policy there can be no doubt that the indebtedness is to come out of the cash surrender value before purchasing paid-up insurance. The agreement provides: " In case of default in the payment of any premium or instalment thereof, on said policy, the Company may terminate said insurance, * * * and may deduct the indebtedness hereby secured from the amount which would otherwise be the surrender value of the policy, and apply the residue thereof, if any, to the purchase of paid-up or extended insurance." Subdivision 8 of section 16 of the Insurance Law seems to provide that such agreement must be read with the policy. In *Langley* v. *Prudential Ins. Co.* (271 Fed. 776) it was said, assum-

ing the policy provisions to be ambiguous, "the practical construction placed upon the contract by the parties when the loan was made will be accepted by the courts and is controlling here." However, it is not necessary to read the loan agreement in conjunction with the policy in order to reach the conclusion indicated.

The order of the Appellate Term should be modified so as to provide that the amount set forth in the order and judgment of the City Court in favor of plaintiff be reduced to the sum of $203.97, with interest from November 1, 1934, and as so modified affirmed.

CARSWELL, J., concurs.

Order of Appellate Term affirmed, with costs.