## CORN v. UNITED AMERICAN LIFE INS. CO.

### Civ. No. 3482.

United States District Court, D. Colorado.
April 10, 1952.

Wm. Rann Newcomb, Denver, Colo., for plaintiff.

Stanley T. Wallbank and Henry S. Sherman, Denver, Colo., for defendant.

KNOUS, District Judge.

This is an action upon a purported life insurance contract.

Both parties have filed a motion for summary judgment.

The pleadings and documents on file which may be considered by the Court in its determination whether or not there

exists a genuine dispute as to any material fact, reveal the following transactions and occurrences:

Joe S. Wilder was and acted as an agent of the defendant, United American Life Insurance Company, hereinafter referred to as the Company. He solicited Donald A. Corn, hereinafter referred to as Corn, as a client.

The Company's application for an insurance policy, which was submitted to Corn for completion, consisted, so far as it is pertinent here, of two printed forms. One of these forms was entitled "Part One Of Application For Insurance;" the other was headed, "Part Two Of Application For Insurance."

Corn executed Part One on January 15, 1948, in the presence of Joe S. Wilder, Al B. Sobie, who was also an agent of the Company, and Jack Corn, who was Corn's brother. It contained all the data required by the Company for the issuance of a policy, other than information concerning the health and physical condition of the applicant. Part Two, which was never filled out and which Corn never executed, was a medical or health questionnaire. After Corn had signed Part One, he gave it to Joe S. Wilder, together with a check in the amount of $437.10 to cover the first year's premium on the anticipated policy. At the same time he suggested to Wilder that he desired to take the physical examination, which the Company required before it would issue a permanent policy, on or about January 20, 1948, before a Dr. Satorious. Wilder agreed to this arrangement. Before Wilder left he handed Corn Part Two of the application, which had to be countersigned by the examining physician, a container for Corn's urine specimen which was to be submitted to the Company in connection with Part Two, and a receipt for the $437.10 premium payment.

Corn never took his physical examination and, as mentioned, he never submitted nor completed Part Two of the application for insurance.

On January 19, 1948, the Company wrote a letter to Corn which included a reminder that he take the required physical examination. On January 28, 1948, it wrote another letter, urging Corn to submit Part Two of the application in the near future; and, on February 10, 1948, it wrote a third letter calling to Corn's attention that Part Two had not been received and that it was anxiously expected.

On February 16, 1948, Corn was killed in an airplane accident.

His father, Arthur B. Corn, who was named sole beneficiary in Part One of the application, takes the position that the terms contained in Part One and in the receipt for the first premium constituted a completed contract of insurance and complete coverage on the date of Corn's death. The Company denies all liability. It has tendered back a check in the amount of $437.10 to those who would be entitled thereto. The tender was refused and following the institution of this proceeding such sum was deposited by the defendant in the registry of this Court.

Part One contained the following material provisions:

"I expressly agree on behalf of myself and of any person who shall have or claim any interest in any policy issued on this application, consisting of Parts 1 and 2, as follows:

"1. All statements and answers contained herein together with those made in part 2 hereof are full, complete and true as written, are correctly recorded and are material. This application, including part 2 hereof, which part 2 I agree to complete promptly as the Company may require, and any policy or policies issued in consequence thereof shall constitute the entire contract of insurance and the Company shall not be bound in any way by any statements, promises or information made or given by or to any agent or other person at any time unless the same be reduced to writing and submitted to the Company at its Home Office and made a part of such contract. * * *

"2. The insurance hereby applied for shall not be considered in force until a policy shall have been issued by the Company * * * and said policy

manually received and accepted by me, subject to all the provisions therein contained, while my health, habits, and occupation are the same as recorded in Parts 1 and 2 hereof, and the first premium paid, and when the policy shall be so received and accepted and paid for, it shall at the pleasure of the Company relate back and take effect as of the date of this application \* \* \* except that if *the full premium is paid in advance to an authorized agent of the Company while I am in good health and the receipt in the form attached hereto delivered, then the liability of the Company shall be as stated in such receipt.* \* \* \*

"4. The Company shall have sixty days from the date hereof or from the receipt of medical examination, whichever is later, within which to consider and act upon this application and if within such period a policy has not been received by me or if I have not received notice of approval or rejection, then this application shall be deemed to have been declined by the Company." (Italics supplied.)

The receipt acknowledging payment of the first year's premium, and to which reference is made in the provisions of Part One of the application, was originally attached to it. Wilder, who filled in the necessary data when Corn paid the premium in advance, detached it and delivered it to Corn. It contained, inter alia, the following provision:

"This receipt must not be detached unless settlement toward first premium has been made at time of application and shall operate as a Binding Receipt under the conditions hereafter set forth under paragraph 'first'.

"Received from Donald A. Corn \* \* the sum of Four Hundred Thirty-Seven 10/100 dollars ($437.10) \* \* \* in connection with this application for insurance \* \* \* and which application contains applicant's declaration that \* \* \* he assents to the terms of this receipt as follows:

"First—If a full first premium \* \* has been paid at the time of making such application, and declaration of such payment is made therein, the insurance, subject to the terms and conditions of the policy contract applied for and in use by the Company at this date, shall take effect on the date hereof *provided the application is completed as agreed therein and provided the applicant is on this date a risk acceptable to the Company under its rules, limits and standards,* \* \* \* *and provided further that the applicant is on this date in good health;* otherwise, the payment evidenced hereby shall be returned upon demand and surrender of this receipt.

"Second—This receipt shall operate as a Conditional Receipt if the insurance is not effective coincident herewith under the exact conditions heretofore stipulated and if a policy differing in form, amount or premium from that applied for is offered, in which event no insurance shall be considered in effect under the application herein referred to unless and until the full first premium is paid and a policy actually delivered to and accepted by the applicant during the continued good health of the applicant. \* \* \*" (Italics supplied.)

In disposing of the Company's motion for summary judgment, to which the Court will address itself in the first instance, the construction of the above-quoted excerpts from both Part One of the application for insurance and the receipt for the first premium must necessarily play a dominating role. Such construction is not governed by any special rules peculiar to contracts of insurance, but by the same principles which control the interpretation of any ordinary agreement. What the parties intended, mutually agreed to, and their minds met upon, provides the measure of their obligation. Smiley v. Prudential Ins. Co., 321 Mich. 60, 32 N.W.2d 48. Ambiguity, if any, must be resolved against the company which prepared the instruments in question. Mohrstadt v. Mutual Life Ins. Co., 8 Cir., 115 F. 81; Guant v. John Hancock Mut. Life Ins. Co., 2 Cir., 160 F.2d 599; Hart v. Travelers' Ins. Co.,

236 App.Div. 309, 258 N.Y.S. 711. And everything agreed upon must be considered as a whole, so that Part One of the application and the receipt have to be looked to together and treated as a unit in the disposition of the motion. Pace v. Provident Sav. Life Assur. Soc., 5 Cir., 113 F. 13; DeCesare v. Metropolitan Life Ins. Co., 278 Mass. 401, 180 N.E. 154, 81 A.L.R. 327; Hines v. Metropolitan Life Insurance Co., 207 S.C. 420, 36 S.E.2d 137.

■ There is some confusion among the authorities as to the legal effect of the arrangement disclosed by the record herein. From a study of these decisions, the Court is satisfied that many of the seeming conflicts and the conclusions reached therein may be accounted for by the factual differences in the terms of the individual contracts involved. The Court, therefore, believes that each contract for interim insurance should be measured on its own merits and in the light of its own particular wording. See Stonsz v. Equitable Life Assurance Society, 324 Pa. 97, 187 A. 403; Colorado Life Co. v. Teague, Tex.Civ.App., 117 S.W.2d 849. So considered, there can be little doubt that the hereinabove-italicized provisos (in Section 2, Part One of the application and in paragraph "first" of the premium receipt), constituted conditions precedent to the effectuation of interim insurance pending issuance of a permanent policy. An ordinary common sense interpretation of the critical clause in the receipt reveals that the word "provided" was used in the sense of "if." Insurance was to take effect as of January 15, 1948, *if* Part Two was promptly completed and the remaining conditions were met. Mohrstadt v. Mutual Life Ins. Co., 8 Cir., 115 F. 81; Gonsoulin v. Equitable Life Assurance Society, 152 La. 865, 94 So. 424; 3 Williston on Contracts, § 671, p. 1927.

In addition, it must be remembered that the completion of Part Two of the application required the taking of a medical examination and the submission to the Company of the data revealed by that examination together with a urine specimen and a medical history. In other words, the first condition in the proviso required acts on the part of Corn rather than acts or a state of mind on the part of the Company. The Restatement of Contracts, section 260, comment b, expresses unequivocally that:

"Any clause * * * in a policy of insurance requiring any act to be done by the insured, will make that act a condition of the covenant or promise of insurance."

■ It must also be remembered that Part Two was actually an element of the application for insurance. Surely the parties did not intend coverage to be effected prior to the time it was fully applied for. It is one thing to condition interim protection on approval of the application or the insurability of the applicant or the good health of the applicant or the acceptance of the application, and quite another thing to condition it on the completion of the application. In the former instances the state of mind or satisfaction of the insurer is the controlling factor, and would be, in the case in bar, if only the last two provisos in the receipt were involved. See: Restatement of Contracts, section 265. In a number of cases, the courts have refused to put a strict construction upon conditions of this sort, or have found ambiguities and disregarded the condition by interpreting the conflict in favor of the insured, or have allowed recovery because equity and fairness require that an insurance company not defeat liability after a loss has occurred by merely exercising its judgment or preference when it has enjoyed all the advantages and benefits of an interim contract. Wolfskill v. American Union Life Ins. Co., 237 Mo.App. 112, 172 S.W.2d 471; Starr v. Mutual Life Ins. Co., 41 Wash. 228, 83 P. 116; Reck v. Prudential Ins. Co., 116 N.J.L. 444, 184 A. 777; Stonsz v. Equitable Life Assur. Society, 324 Pa. 97, 187 A. 403, 107 A.L.R. 178; Hart v. Travelers Ins. Co., 236 App.Div. 309, 258 N.Y.S. 711; Gaunt v. John Hancock Mutual Life Ins. Co., supra. The plaintiff relies on this line of cases, although even they express a minority view. See annotations at 81 A.L.R. 332, 107 A.L.R. 194 and 2 A.L.R.2d 943.

Diligent search has failed to reveal a single authority which recognizes the existence of interim insurance where the alleged insured himself had failed to take

steps upon which the agreement of the parties conditioned liability.

In addition, it should be pointed out that at the time Corn passed away, the Company had no knowledge of his physical condition. When Part One was completed, Wilder informed Corn that Part Two had to be executed and that this required a physical examination. Besides that, the Company mailed Corn three letters in a period of less than one month, urging him to take the examination, when it appeared that he was procrastinating about the matter. Under those circumstances, it is not readily conceivable that the Company intended to insure Corn, or that Corn understood the Company to intend to insure him, without any knowledge of his physical status.

It is argued that unless Corn had temporary coverage prior to the taking of his physical examination and the submission of Part Two of the application, the receipt is a sham and a trick, designed to provide certain benefits for the Company without any advantages to the purported insured. This argument completely overlooks the fact that the Company could delay the issuance of a permanent policy for a period of sixty days after receipt by it of Part Two. In other words, if Corn had taken the physical examination, completed Part Two, and submitted it to the Company, the latter would have had sixty days from receipt of the data in which to accept or reject the application. Had that situation arisen, and had Corn died during the sixty-day period and prior to the issuance of a policy, an entirely different picture would be presented and the argument might be appropriate.

The Court has given particular attention to the case of Gaunt v. John Hancock Mutual Life Ins. Co., supra [160 F.2d 600], because the plaintiff relies upon it so very strongly here. In that case, the critical provision in the policy provided for coverage as of the date a certain part B was completed, if Gaunt was insurable under the rules of the company and if the application, including part B, was approved prior to death, and if an advance premium was paid. The following facts are quoted from Judge Learned Hand's opinion:

"At the time of signing the 'application' Gaunt paid the full first premium * * *. On the same day Kelman (a solicitor of the company) took Gaunt to the defendant's local examining physician who found him insurable under the rules and who recommended him for acceptance. Kelman delivered the 'application' and the premium, and the physician delivered the favorable report, to one, Wholey, the defendant's local agent * * * who prepared a report recommending acceptance * * which he sent with the 'application' and the physician's report to the 'home office,' where the documents were received on the 9th. Since it appeared from the papers that Gaunt had been classified as '4F' in the draft because of defective eyesight, the 'medical department' at the 'home office' required another physical examination * * *.

This took place on the 17th; On the same day the local physician wrote to the 'home office' again passing Gaunt; and on the 19th 'a lay medical examiner' for the 'medical department' at the 'home office' approved the 'application.' Nevertheless the 'home office' on the 20th wrote to Wholey asking further information as to Gaunt's classification in the draft; Wholey answered satisfactorily on the 24th * * * and on the 26th one of the 'doctors of the medical department * * * approved' the application 'from a medical standpoint.' The 'home office' received news on that day of Gaunt's death, and never finally approved the 'application,' although the judge found that, if Gaunt had lived, it would have done so."

It can readily be seen from the foregoing recitals that the facts in the Gaunt case are so radically different from the situation in the case at bar that to rely upon the decision and consider it as a precedent for resolving the instant controversy would stretch the principles of stare decisis past the breaking point. If anything, Gaunt, by implication, serves to accentuate the hiatus which precluded coverage in this case on the date Corn died.

In view of the fact that under the terms of the agreement between the parties, the defendant Company never came under a duty to perform, and there are no materially disputed issues of fact which, if resolved in favor of the plaintiff could possibly give rise to such a duty, the defendant's motion for summary judgment is well taken.

It Is, Therefore, Ordered and Adjudged that the defendant's motion for summary judgment be and the same is hereby sustained and that judgment herein be entered in favor of the defendant and against the plaintiff and the above entitled action and complaint be dismissed out of this Court.

The premium deposit heretofore made by defendant shall be paid from the registry of the Court to the personal representative of the estate of Donald A. Corn, deceased, or in the event such estate has been closed, to those shown to be entitled thereto.