Edgar R. and Maxine M. TAYLOR, Appellants,

v.

NEW YORK LIFE INSURANCE COMPANY, a foreign corporation, Appellee.

No. 7295.

United States Court of Appeals
Tenth Circuit.

Nov. 2, 1963.

William K. Powers, of Dyer, Powers & Gotcher, Tulsa, Okl. (Thomas G. Marsh, Tulsa, Okl., on the brief), for appellants.

V. P. Crowe, of Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, Oklahoma City, Okl. (William G. Paul, Oklahoma City, Okl., on the brief), for appellee.

Before PICKETT, HILL and SETH, Circuit Judges.

PICKETT, Circuit Judge.

The plaintiffs brought this action to recover the proceeds of a life insurance contract in which they were named the beneficiaries. It was alleged that on October 7, 1960, their son, William A. Taylor, made application to the defendant New York Life Insurance Company, for a life insurance policy, and paid the first premium at the time the first part of the application was completed, and that the company wrongfully denied that the insurance was in effect when the applicant died. This is an appeal from a judgment entered on a jury verdict in favor of the defendant.

When the son completed Part I of the application and paid the first premium, the company's soliciting agent delivered to him a receipt for such payment. This receipt was a part of and attached to Part I of the application, and contained this language:

"IT IS MUTUALLY AGREED THAT:

"(1) If the Company is satisfied from evidence received by it that, at the time of completion of the application, the Proposed Insured (and the Applicant for the Child's Protection Benefit, if any) was acceptable under the Company's rules for the policy applied for, either as a standard risk or as an extra risk solely because of occupation or aviation activities, and if the soliciting agent has received in cash, as indicated in item 23 above, (a) an amount which equals the full first premium for the policy applied for, the policy shall be deemed to be in effect as from the date specified in item 17 above as if it had been delivered, or * * *."

Item 17 provides that the policy shall take effect "as of last date of Parts I and II of this application." Part II of the application involved the medical examination, which was completed on October 10, 1960. This examination disclosed that the applicant, who was 21 years of age, had lost approximately 65 pounds in weight (decreasing from 240 to 175 pounds) during the preceding year. The examining physician who completed Part II made reference to the loss of weight, stating that it was "probably due to loss of appetite."

When the application was received on October 14, 1960, at the home office of the company in New York City, it was not ap-

proved because of the unexplained loss of weight. The Senior Underwriter forwarded a "loss of weight questionnaire" to the field medical examiner to obtain further information concerning the weight loss, with specific instructions to determine if the applicant was still losing weight and, if so, to state the cause. The physician made a second examination of the applicant and found there had been a weight loss of 5½ pounds since the first examination. This form was returned showing the cause of the continuing weight loss to be "unknown."

The applicant was killed in an automobile accident in Colorado on November 1, 1960. Thereafter, the company formally rejected the application for the reason that the unexplained weight loss rendered the applicant uninsurable as a standard risk under the company rules.

The application for insurance was made in Colorado, and the parties agree that Colorado law is controlling. It is urged by the appellants that the Colorado courts have not considered the exact question presented here, and that this Court should accept the law of California as announced in Ransom v. Penn Mutual Life Ins. Co., 43 Cal.2d 420, 274 P.2d 633, and followed in the federal courts for the 9th Circuit. Metropolitan Life Ins. Co., v. Grant, 9 Cir., 268 F.2d 307; Wood v. Metropolitan Life Ins. Co., N.D.Cal., 193 F.Supp. 371, aff'd 9 Cir., 302 F.2d 802. The appellants contend that under the

Ransom rule, as a matter of law and public policy, a contract of insurance results when an application is completed and the premium paid, subject to the right of the company to terminate the coverage if the applicant is subsequently found not acceptable. In other words, it is said that under these circumstances, the applicant is insured until rejected, even if later he is found to be uninsurable under company rules. We doubt that the Ransom decision means that insurance is effective during this period if the contract terms are clearly to the contrary,[1] but, in any event, we are satisfied that the general law, and the law of Colorado, does not point in this direction. In Corn v. United American Life Ins. Co., D.C. Colo., 104 F.Supp. 612, the court had under consideration an application for insurance which contained provisions similar to those in the present case. The applicant had signed Part I of the application and paid the first year's premium. He died prior to the completion of Part II. The court concluded that the provisions of the contract prevailed and that there was no liability for the insurance prior to the completion of Part II of the application.[2] In Columbian Nat. Life Ins. Co. v. McClain, 115 Colo. 458, 174 P.2d 348, 169 A.L.R. 278, the insured had paid the first year's premium, but not the second. When the policy was delivered, it was dated back to the date of the application. The insured died more

---

1. In Ransom v. Penn Mutual Life Ins. Co., 43 Cal.2d 420, 274 P.2d 633, at 636, the court considered the contract provisions and concluded that there was an ambiguity as to their meaning and stated: "There is an obvious advantage to the company in obtaining payment of the premium when the application is made, and it would be unconscionable to permit the company, after using language to induce payment of the premium at that time, to escape the obligation which an ordinary applicant would reasonably believe had been undertaken by the insurer. Moreover, defendant drafted the clause, and had it wished to make clear that its satisfaction was a condition precedent to a contract, it could easily have done so by using unequivocal terms. While some of the language tends to support the com-

pany's position, it does no more than produce an ambiguity, and the ambiguity must be resolved against defendant."

2. In Corn v. United American Life Ins. Co., D.C., 104 F.Supp. 612, 614, the receipt stated that the applicant agrees to the terms of the receipt, which read: "except that if *the full premium is paid in advance to an authorized agent of the Company while I am in good health and the receipt in the form attached hereto delivered, then the liability of the Company shall be as stated in such receipt.* * * *" This case involved Colorado law, and was decided by District Judge Wm. Lee Knous, for many years a distinguished member of the Colorado Supreme Court.

than one year after the date of the policy, but within a year from the time the policy was delivered and paid for. In determining when the policy became effective, the court said, 174 P.2d at 350:

"The rules of construction of insurance policies are simple; the application often difficult. In construing such a contract of insurance, the court should attempt to ascertain and carry out the intention of the parties which is to be ascertained, if possible, from the words of the contract alone. It should be given a reasonable construction such as intelligent business men would give to it, and where, by reason of ambiguity in the language of the policy, there is doubt or uncertainty as to its meaning and it is fairly susceptible of two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted. The courts will construe the policy, when possible, so as to uphold, rather than avoid, the contract and to accomplish the purpose for which it was made. Forfeiture for nonpayment of premiums is not favored nor authorized unless clearly required by the wording of the contract. * * *

"With this situation existing, the insurance company delivered to McClain a policy dated back three and a half months prior to the date when it was delivered or paid for or even applied for. Beyond dispute, this policy went into effect on September 6, 1940, and the annual premium should have provided insurance coverage for one year from that date, unless there is evidence of agreement to the contrary between the parties."

In Denton v. Prudential Ins. Co. of America, 100 Colo. 293, 67 P.2d 77, 79, the court used this language:

"In none of the cases cited by counsel for plaintiff have the courts gone as far as we are asked to go in this case. We agree with the rule that contracts of insurance are to be construed most strongly against the company and liberally construed in favor of the insured, but all the courts agree that they may not substitute an entirely different contract from that which the parties have entered into."

The meaning of contracts of insurance is to be determined by the same principles of law applicable to other contracts. While an ambiguity or doubt as to the coverage of an insurance contract will be resolved in favor of coverage, a court will not rewrite the contract if the intentions of the parties are clear from its provisions. Mofrad v. New York Life Ins. Co., 10 Cir., 206 F.2d 491; 29 Am. Jur. Insurance § 246. We find no ambiguity or uncertainty in the provisions of the application. A reading of the contract here by one trained in the insurance business or by one unacquainted with the niceties of life insurance agreements, would readily ascertain that if an applicant pays the first premium when the application is completed, he will be insured from the date of such completion only "if the company is satisfied from evidence received by it that, at the time of the application, the proposed insured * * * was acceptable under the company's rules for the policy applied for. * * *" The company's evidence was that from the information furnished by the applicant, he was not acceptable under company rules. This was the question submitted to the jury which found for the defendant, and we find no error.

Finally, it is contended that the court erred in refusing to admit evidence to prove (1) that the applicant was in fact insurable; and (2) the reasons for his unusual loss of weight. Under the contract provisions, actual insurability is not the test. The evidence was undisputed that the only information submitted to the company was that the applicant had lost 65 pounds within the year preceding the application, and on reexamination, had lost an additional 5½ pounds, with no explanation of the cause of the loss. Under the contract, in determining

whether the applicant was acceptable for the insurance applied for, the company was bound to consider only the material contained in the application. The applicant had the opportunity to explain the cause of his loss of weight, which would then have been in the company's possession, but he made no such explanation. The evidence was properly excluded.

Affirmed.