**NORTH AMERICAN LIFE AND CAS-
UALTY COMPANY, Appellant,**

v.

**Jane ARMSTRONG, Appellee.**

*No. 9196.*

United States Court of Appeals
Tenth Circuit.

Sept. 20, 1967.

---

Warren O. Martin, Denver, Colo. (Winner, Berge, Martin & Camfield, Denver, Colo., on the brief), for appellant.

Leslie A. Gross, Denver, Colo. (Bernard D. Steinberg, Denver, Colo., on the brief), for appellee.

Before LEWIS and SETH, Circuit Judges, and BRATTON, District Judge.

SETH, Circuit Judge.

The appellant insurance company, defendant below, appeals a jury verdict finding the company liable for the face amount of a policy insuring the life of appellee's deceased husband.

On March 19, 1965, appellee and her husband applied for life insurance for the husband. An insurance broker to whom they were introduced placed the risk with the appellant company after contacting the company's regional manager in Denver concerning the appropriate premium for the decedent's aviation employment. The decedent-insured was a commercial charter pilot and was twenty-one years old. The broker completed the necessary application forms, computed the first month's premium, accepted payment thereof from the decedent, and issued a "conditional receipt." The receipt provided that the policy thus applied for would be in effect from "* * * the *later* of (a) the date of this receipt, (b) the date of the medical examination, if one is required for the policy by the Company's current underwriting rules and practices, * * *."

During the interview with the broker the decedent stated that he had suffered from rheumatic fever at age twelve, but that he had completely recovered. The decedent possessed an unlimited Federal Aviation Agency medical certificate, and offered to have a medical examination for the company if one were required.

The broker submitted the decedent's application on a "non-medical supplement," a form used when the applicant is not to be examined. The application forms were forwarded by the broker to the appellant's regional office and then to the home office in Minneapolis, where they arrived on March 29, 1965. On March 30 and 31, the home office sent medical inquiries to two physicians, one of whom had attended the decedent during his attack of rheumatic fever, and the other who had made the decedent's last FAA medical examination in April 1964.

On March 30, 1965, eleven days after applying for life insurance and receiving the conditional receipt from the broker, the decedent was killed in a plane wreck at Aspen, Colorado. At no time prior to

death was the decedent requested to submit to a medical examination by the broker, by the appellant's regional manager, or by the home office, and no policy had been issued by the company.

The company refunded the first month's premium paid by the decedent, but declined to make payment of the face amount of the policy to the appellee-beneficiary on the ground that its underwriting policy required a medical examination for any applicant with a history of rheumatic fever, and since the medical examination was not completed prior to death the policy had never been in effect as provided by condition (b) of the receipt.

A few days after the decedent's death, the company received responses from the two physicians indicating that the insured had completely recovered from rheumatic fever and was in excellent health.

■ Conditions (a) and (b) of the receipt control the effective date of the insurance policy. The question presented is one of fact, not of law, for the language of the receipt is not ambiguous nor does it call for construction by the court as a question of law. The insurance policy was effective on the date of the receipt unless the company's current underwriting practice required the decedent to have a medical examination. Whether or not a medical examination was required for the decedent was the question of fact properly submitted to the jury by the trial court.

A vice-president of underwriting from the company's home office testified that the company "would never consider issuing an insurance policy without a medical examination on any history of rheumatic fever," and that the company had "never issued a policy without a medical for a rheumatic fever applicant." The vice-president's testimony was unsupported by any company publication or inter-office memorandum establishing such an underwriting practice. The vice-president explained that its field salesmen and agents were required to obtain medical examinations for applicants of a certain age or applicants purchasing a certain amount of insurance. Salesmen and agents were not authorized to obtain medical examinations for every applicant with a history of rheumatic fever because the company feared that "if we would permit our agents or salesmen or representatives to request medical examinations whenever they saw fit, I think their friends would be receiving more medical —free medical examinations than we could just put up with. So, it is a sort of a protection." The decedent's insurance application was correctly submitted on the "non-medical" basis, which the vice-president explained as follows:

"For the sake of expense and competition, the industry figured that by obtaining questions of a medical nature from the applicant himself through their representative by entering the answers on the questions, to the questions, that we could evaluate and determine insurability without going through the expense of a medical examination."

The vice-president also testified that the ultimate decision regarding an applicant's eligibility for insurance was a "matter of factual judgment" and not a "matter of fixed rule."

The appellant insurance company argues that the trial court's instructions improperly permitted the jury to speculate on whether the decedent's application would have been accepted and the policy issued but for the applicant's untimely death. The appellant says:

"* * * the application provided for liability after the medical examination, and since none could be had, there was no liability on the part of the insurance company. It was error for the trial court to tell the jurors that they could speculate on whether the policy would have been issued by the company if Mr. Armstrong had not been killed."

This argument however ignores the primary question of fact to be decided by the jury, that is, whether a medical ex-

amination would have been required for this applicant by company underwriting practice.

■ No medical examination was requested by the company prior to the applicant's death, and the application was being processed when the applicant died. Resolution of the primary fact question necessarily required the jury to consider whether the company's rules would have required an examination. The trial court's instructions were specifically focused on the decedent and whether the company would have required an examination for this particular decedent, and the jury found in effect that there was no company rule requiring an examination of this decedent. The jury was free to consider all probative evidence bearing on the question. The physicians' responses to the company's inquiries, introduced in evidence by the company, indicated recovery from rheumatic fever and excellent health for the applicant; these are factors bearing directly on the question of whether the company would have required an examination for this particular applicant. Since the jury found that no examination would be required, the jury could also find that the policy would have issued in due course effective from the date of the receipt. The case was tried on the limited issues and we find no error in the trial court's instructions nor in its refusal of appellant's motions. Appellant's reliance on Taylor v. New York Life Ins. Co., 324 F.2d 768 (10th Cir.), is misplaced, for the facts and issues in Taylor distinguish it from the case at bar. In Mofrad v. New York Life Ins. Co., 206 F.2d 491 (10th Cir.), it was established that an examination was required and requested. The issue here presented was not in the cited case.

■ Part of appellant's brief is devoted to an argument demonstrating that the courts of Colorado have not adopted a doctrine of interim insurance wherein the insurance is effective immediately but subject to rejection by the insurance company. See Taylor v. New York Life Ins. Co., supra, and cases discussed therein. In the case at bar the insurance was effective on the date of the receipt unless a medical examination was required, and the only question presented was one of fact for the jury. Interim insurance as such was not an issue.

The judgment is affirmed.